Emil P. Khatchatourian, CA Bar No. 265290
ekhatchatourian@foley.com
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone:  (312) 832-4500
Facsimile:   (312) 832-4700

Attorneys for Intervenor
Global Growth Capital S.à.r.l.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| TAYLER ULMER, SERGIO GIANCASPRO, CORI ERSHOWSKY, ALEXIS GERACI, JAMERE BOWERS, and ADAKU IBEKWE on behalf of themselves and all similarly situated employees,<br><br>Plaintiffs,<br><br>vs.<br><br>STREETTEAM SOFTWARE, LLC d/b/a POLLEN, NETWORK TRAVEL EXPERIENCES, INC., JUSEXPERIENCES UK LIMITED, CALLUM NEGUS-FANCEY, LIAM NEGUS-FANCEY, and JAMES ELLIS,<br><br>Defendants. | **Case No. 2:23-cv-02226-HDV-AGR**<br><br>**COMPLAINT IN INTERVENTION**<br><br>Judge:              Hon. Hernán D. Vera<br>Courtroom:     Courtroom 5B<br>Complaint Filed: August 2, 2023 |

-2-

| | |
|---|---|
| GLOBAL GROWTH CAPITAL, S.A.R.L., a Luxembourg private company, | |
| Intervenor Plaintiff, | |
| vs. | |
| TAYLER ULMER, SERGIO GIANCASPRO, CORI ERSHOWSKY, ALEXIS GERACI, JAMERE BOWERS, and ADAKU IBEKWE, individuals, on behalf of themselves and all similarly situated employees; NETWORK TRAVEL EXPERIENCES, INC., f/k/a JusTours Inc., a Delaware corporation; STREETTEAM SOFTWARE, LLC d/b/a POLLEN, a Delaware limited liability company; JUSEXPERIENCES UK LIMITED, a United Kingdom private limited company; CALLUM NEGUS-FANCEY, an individual; LIAM NEGUS-FANCEY, an individual; and JAMES ELLIS, an individual, | |
| Intervenor Defendants. | |

Intervenor plaintiff Global Growth Capital S.à.r.l. ("GGC"), by its undersigned counsel, as and for its complaint against intervenor defendants Tayler Ulmer, Sergio Giancaspro, Cori Ershowsky, Alexis Geraci, Jamere Bowers, and Adaku Ibekwe, plaintiffs in the existing action (collectively, "Ulmer"), and Network Travel Experiences, Inc., formerly known as JusTours Inc. ("NTE"), StreetTeam Software, LLC, d/b/a Pollen ("StreetTeam LLC" and, together with NTE, the "Guarantor Defendants"), JusExperiences UK Limited ("JusExperiences" and also a Guarantor as defined below), Callum Negus-Fancey, Liam Negus-Fancey, James Ellis, and Does 1 through 10, defendants in the existing action, alleges as follows:

## INTRODUCTION

1. GGC has perfected security interests in all of the Guarantor Defendants' assets that were granted in connection with loans in the cumulative amount of $25,000,000 that GGC issued to the Guarantor Defendants' parent company, StreetTeam Software Ltd. ("StreetTeam Ltd."). The loans to StreetTeam Ltd. are in default, and the Guarantor Defendants, who have unconditionally guaranteed them, are obligated to pay GGC an amount not less than **$20,681,249.94**. The Guarantor Defendants are no longer in operation, and GGC is evaluating its options and legal remedies with respect to the Guarantor Defendants' assets (collectively, the "Collateral"), including by actively working to monetize all of the Collateral.

2. GGC intervenes in this matter to protect the Collateral and to defend its interests against any inaccurate and misleading allegations by Ulmer as to the alleged validity, priority, and extent of their claims. On information and belief, Ulmer may assert certain lien rights and priority claims in the Collateral pursuant to Cal. Civ. Code. Proc. § 1205, which would impinge on GGC's rights as a senior secured lender.

## JURISDICTION AND VENUE

3. Consistent with Rule 8(a)(1) of the Federal Rules of Civil Procedure, this Court has already exercised jurisdiction over this matter, and has granted GGC leave to

refile this Complaint in Intervention in the above-captioned action "forthwith without further leave of the Court pursuant to Fed. R. Civ. P. 24(a)(2) being required." *Order Approving Stipulation to Dismiss Action and Permit Intervention in Related Action* (the "Intervention Order") ECF 117, ¶ 2, *Giancaspro v. Network Travel Experiences, Inc.* (the "Giancaspro Case"), Case No. 2:22-cv-05745 (C.D. Cal., June 16, 2023).

4. This Court has supplemental jurisdiction over the claim set forth herein pursuant to 28 U.S.C. § 1367(a).

5. GGC does not contest that this Court is the proper venue for this proceeding.

### THE PARTIES

6. GGC is a Luxembourg private company. Pursuant to 28 U.S.C. § 1332(c)(1), GGC is a citizen of Luxembourg.

7. GGC is informed and believes, and upon that basis alleges, that:

   a. Taylor Ulmer is a resident of Kings County, New York.
   b. Sergio Giancaspro is a lawful permanent resident of the United States and a resident of California.
   c. Cori Ershowsky is a citizen and resident of California.
   d. Alexis Geraci is a citizen and resident of New York.
   e. Jamere Bowers is a citizen and resident of Wisconsin.
   f. Adaku Ibekwe is a citizen and resident of California.
   g. NTE, formerly known as JusTours Inc., is a Delaware corporation with its principal place of business in Los Angeles, California.
   h. StreetTeam LLC is a Delaware limited liability company that had its principal place of business in Los Angeles, California, until 2022, from which point in time it has had no office.
   i. JusExperiences is a United Kingdom private limited company with its principal place of business in London, United Kingdom.

j. Callum Negus-Fancey is a citizen and resident of London, United Kingdom.

k. Liam Negus-Fancey is a citizen and resident of London, United Kingdom.

l. James Ellis is a citizen and resident of London, United Kingdom.

m. Does 1 through 10 are those persons so designated by Sergio Giancaspro in paragraph 19 of his First Amended Complaint in the Giancaspro Case. *See* Giancaspro Case, ECF 84.

## GENERAL ALLEGATIONS

8. On or about February 13, 2020, GGC entered into a facilities agreement (the "Facilities Agreement") with StreetTeam Ltd., as borrower ("Borrower"), and with StreetTeam Ltd. and its subsidiaries—including Guarantor Defendants—as guarantors (the "Guarantors"[1] and, together with Borrower, the "Obligors"). A true and correct copy of the Facilities Agreement is attached hereto as **Exhibit 1**.

9. Under the Facilities Agreement, GGC made available to the Obligors two term loan facilities in the aggregate amount of $25,000,000 (the "Loans").

10. Each of the Guarantors, including the Guarantor Defendants, executed irrevocable and unconditional joint and several guaranties in connection with the Facilities Agreement and the Loans (the "Guaranties"). *See* Exh. 1, § 15 and pp.79-82.

11. Also, in connection with the Facilities Agreement, on or about February 13, 2020, the Guarantor Defendants, as Obligors, executed a security agreement (the "Security Agreement") whereby they pledged, collaterally assigned, and granted to GGC a continuing security interest in substantially all of their assets, including, without limitation, their deposit accounts (the "Collateral"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit 2**.

---

[1] JusExperiences is also a Guarantor.

12. Pursuant to the Security Agreement, on or about May 28, 2020, both Guarantor Defendants executed deposit account control agreements (the "<u>DACAs</u>"), true and correct copies of which are attached hereto as **Exhibits 3** and **4**.  As authorized by the Security Agreement, GGC filed UCC financing statements in all appropriate jurisdictions and thereby perfected its interest and rights in the Collateral.  True and correct copies of all relevant UCC financing statements and amendments are attached hereto as **Exhibits 5** - **9**.

13. Also, in connection with the Facilities Agreement, on or about February 13, 2020, the Guarantor Defendants, as Obligors, both executed an intellectual property security agreement (the "<u>IP Security Agreements</u>"), granting and unconditionally pledging to GGC a security interest in substantially all of their intellectual property.  True and correct copies of the IP Security Agreements are attached hereto as **Exhibits 10** and **11**.

14. Pursuant to the IP Security Agreements, the Guarantor Defendants authorized the Commissioner for Patents, the Commissioner for Trademarks, and the Register of Copyrights to record and register the IP Security Agreements and UCC filings, which was completed on February 20, 2020.  True and correct copies of the U.S. P.T.O.'s notices of recordation of GGC's security interests are attached hereto as **Exhibits 12** - **17**.

15. By no later than July 12, 2022, StreetTeam Ltd. had defaulted under the Facilities Agreement, including and based upon information shared with GGC, without limitation, due to its insolvency and the initiation of insolvency proceedings in the United Kingdom.

16. Upon StreetTeam Ltd.'s default, GGC became entitled to execute all of its rights under the Guaranties.

17. On July 12, 2022, GGC provided StreetTeam Ltd. with formal written notice of defaults under the Facilities Agreement, a true and correct copy of which is attached hereto as **Exhibit 18**.  This was followed by a notice of acceleration on October 11, 2022 and a notice of demand to the Guarantor Defendants dated October 11, 2022, true and

correct copies of both of which notices, with bank account information redacted, are attached hereto as **Exhibits 19** and **20** respectively.

18. As of July 19, 2023, the amounts immediately due and owing by each of the Guarantor Defendants to GGC pursuant to the Facilities Agreement and the Guaranties exceed $20,681,249.94.

19. The foregoing amounts, and attorneys' fees and costs associated with collection not reflected here, are secured pursuant to the terms of the Security Agreement.

20. On information and belief, the aggregate value of the Guarantor Defendants' assets is substantially less than the amounts the Guarantor Defendants now owe to GGC, excluding attorneys' fees and costs associated with collection.

21. The Collateral consists almost entirely of accounts receivables and trade names, the value of which would seem almost certain to decrease with the passage of time and such view has been shared by potential third party buyers.

22. On the basis that the Guarantor Defendants appear to be no longer in operation, GGC is evaluating its options and legal remedies with respect to the Guarantor Defendants' assets over which it has security.

23. The Guarantor Defendants and their principals have been cooperating with GGC to find motivated, third-party buyers to acquire the assets constituting GGC's Collateral to consummate a value-maximizing transaction that will allow the Guarantor Defendants to pay down their debt obligations.

24. On August 26, 2022, NTE entered into an asset purchase agreement with All Roads Travel, LLC, a Delaware limited liability company ("ART"), pursuant to which ART agreed to assume NTE's obligations under certain customer contracts and fulfill obligations thereunder that NTE was not able to fulfill. In exchange, ART agreed to assume certain liabilities of NTE, including, without limitation, past-due wages owed to numerous former employees. Evidence was provided by Weinberg Gonser Frost LLP dated August 25, 2022, with their view that the deal was only for loss remediation for NTE

to diminish its liability. As such, there was no payment to GGC, NTE or any of their respective affiliates associated with the asset purchase agreement.

25. In connection with the foregoing, GGC, as the holder of a first-priority lien on NTE's assets, fully and unconditionally released its right and interest in, and all related encumbrances to, the contracts purchased by ART.

26. As of the date hereof, and notwithstanding the limited sale of assets to ART, there has been no sale, transfer, or opening of an escrow for the sale, of the Guarantor Defendants' assets (and GGC's Collateral) that would constitute a sale of all or a substantial part of the Guarantor Defendants' assets outside of the ordinary course of business, and GGC has not released its lien with respect to any other assets of the Guarantor Defendants.

27. Previously, on September 28, 2022, Sergio Giancaspro sought the appointment of a receiver (the "Receivership Motion") that would have potentially taken actions that would have been contrary to GGC's valid and enforceable first-priority security interests in the Collateral. Giancaspro Case, ECF 16. Those actions included, without limitation, (1) not making principal and interest payments to GGC, (2) surcharging the Collateral on account of alleged actions undertaken to preserve the value of the Collateral, and (3) transferring or otherwise administering assets, without GGC's consent, that constitute all or a portion of the Collateral.

28. On November 3, 2022, the Court in the Giancaspro Case denied the Receivership Motion without prejudice. *See* Giancaspro Case, ECF 83. As (a) the Receivership Motion was denied *without prejudice*, and (b) Ulmer may assert certain statutory lien rights in this action, GGC was compelled to intervene in this action to protect its rights and interests.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

29. GGC incorporates by reference the foregoing paragraphs as if set forth herein.

30. This is a claim for declaratory relief brought under the provisions of 28 U.S.C. §§ 2201 and 2202.

31. An actual controversy has arisen and now exists between Ulmer and GGC as to their legal rights and duties for which GGC seeks a judicial declaration of rights as to such matters, as well as further necessary or proper relief.

32. On information and belief, Ulmer may assert in this action certain legal rights to priority claims in the Collateral and the value realized from the sale or other disposition thereof.

33. GGC has perfected first-priority security interests in all of the Guarantor Defendants' assets, and Ulmer's legal rights and interests in the Guarantor Defendants' assets are subordinate to those of GGC.

34. GGC is entitled to a declaration by the Court that GGC has a first-priority lien and security interests in all of the Guarantor Defendants' assets, which constitute the Collateral of GGC.

## **PRAYER FOR RELIEF**

WHEREFORE, GGC prays for the following:

    A. A declaratory judgment determining the validity, priority, and extent of GGC's liens and security interests in the Guarantor Defendants' assets, including, without limitation, that GGC has a first-priority lien and security interests in all of Guarantor Defendants' assets, which constitute the Collateral of GGC.

    B. Costs and fees as allowed by law; and

    C. Such other and further relief as the Court deems equitable and just.

| | |
|---|---|
| DATED:  August 2, 2023 | **FOLEY & LARDNER LLP** |
| | |
| | */s/ Emil P. Khatchatourian*<br>Emil P. Khatchatourian |
| | Attorneys for Intervenor<br>GLOBAL GROWTH CAPITAL S.À.R.L. |