1  BIRD, MARELLA, RHOW,
   LINCENBERG, DROOKS & NESSIM, LLP
2  John V. Berlinski (SBN 208537)
   Cameron R. Partovi (SBN 319589)
3  1875 Century Park East, 23rd Floor
   Los Angeles, CA 90067-2561
4  Telephone: (310) 201-2100
   jberlinski@birdmarella.com
5  cpartovi@birdmarella.com

6  WACHTELL, LIPTON, ROSEN & KATZ
   Jonathan M. Moses (admitted *pro hac vice*)
7  Iliria Camaj (admitted *pro hac vice*)
   Ethan P. Amaker (admitted *pro hac vice*)
8  51 West 52nd Street
   New York, NY 10019
9  Telephone: (212) 403-1000
   JMMoses@wlrk.com
10 ICamaj@wlrk.com
   EPAmaker@wlrk.com
11
   *Attorneys for Specially Appearing Defendants*
12 *GBL Capital Coinvest Master Sàrl; GBL*
   *Capital Participations Sàrl; Sienna*
13 *Investment Managers Luxembourg SA*

14                  **UNITED STATES DISTRICT COURT**

15              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16

17 TAYLER ULMER, SERGIO GIANCASPRO,          Case No. 2:23-cv-02226-HDV
   CORI ERSHOWSKY, ALEXIS GERACI,
18 JAMERE BOWERS, and ADAKU IBEKWE on        Hon. Hernán D. Vera
   behalf of themselves and all similarly situated
19 employees,                                **DEFENDANTS' NOTICE OF MOTION
                                             AND MOTION TO DISMISS
20              Plaintiffs,                   PLAINTIFFS' SECOND AMENDED
         vs.                                 COMPLAINT PURSUANT TO RULES
21                                            12(B)(2), 8(A)(2), AND 12(B)(6)**
   STREETTEAM SOFTWARE, LLC
22 d/b/a POLLEN; NETWORK TRAVEL              Date: October 16, 2025
   EXPERIENCES, INC;                         Time: 10:00 a.m.
23 JUSEXPERIENCES UK LIMITED;               Location: First Street Courthouse
   CALLUM NEGUS-FANCEY; LIAM                 350 W. 1st Street
24 NEGUS-FANCEY; JAMES ELLIS;               Courtroom 5B
   GBL CAPITAL COINVEST MASTER              Los Angeles, California 90012
25 SÀRL; GBL CAPITAL
   PARTICIPATIONS SÀRL; SIENNA
26 INVESTMENT MANAGERS LUXEMBOURG
   SA; and DOES 1-10,
27
                Defendants.
28

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 16, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard before Honorable Hernán D. Vera, in the U.S. District Court for the Central District of California, located at First Street Courthouse, 350 W. 1st Street, Courtroom 5B, Los Angeles, California 90012, defendants GBL Capital Coinvest Master Sàrl, GBL Capital Participations Sàrl, and Sienna Investment Managers Luxembourg SA ("GBL Luxembourg Defendants") will, and hereby do, move the Court pursuant to Federal Rules of Civil Procedure 12(b)(2), (8)(a)(2), and 12(b)(6) for an order dismissing Plaintiffs' Second Amended Complaint ("Complaint" or "Compl.") with prejudice.

The grounds for the motion are that (1) the Court does not have personal jurisdiction over the GBL Luxembourg Defendants, which are foreign entities with principal places of business in Luxembourg, and with no pertinent contacts to the relevant forum (Fed. R. Civ. P. 12(b)(2)), and (2) the Complaint fails to meet pleading requirements or otherwise state a claim against the GBL Luxembourg Defendants (Fed. R. Civ. P. 8(a)(2), 12(b)(6)).

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Serge Saussoy, Henry Monkcom, and Jonathan Moses in Support of the Motion to Dismiss, the reply brief that will be filed, the papers and exhibits on file in this action, the argument of counsel, and any other documents or information that may be considered by the Court.

The parties have conferred pursuant to Local Civil Rule 7-3. Resolved issues are identified in the motion.

Dated:  August 21, 2025

WACHTELL, LIPTON, ROSEN & KATZ

By:  /s/ *Jonathan M. Moses*

Jonathan M. Moses (admitted *pro hac vice*)
Iliria Camaj (admitted *pro hac vice*)
Ethan P. Amaker (admitted *pro hac vice*)
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Fax:  (212) 403-2000
JMMoses@wlrk.com
ICamaj@wlrk.com
EPAmaker@wlrk.com

BIRD, MARELLA, RHOW, LINCENBERG, DROOKS & NESSIM, LLP

By:  /s/ *Cameron R. Partovi*

John V. Berlinski
Cameron R. Partovi
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067
Telephone:  (310) 201-2100
Fax:  (310) 201-2100
jberlinski@birdmarella.com
cpartovi@birdmarella.com

*Attorneys for Specially Appearing Defendants GBL Capital Coinvest Master Sàrl; GBL Capital Participations Sàrl; Sienna Investment Managers Luxembourg SA*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ............................................................................................................................ 9

I.    The Complaint Should Be Dismissed Against the GBL Luxembourg Defendants for Lack of Personal Jurisdiction. ............................................................ 9

    A.    The Court lacks general jurisdiction over the GBL Luxembourg Defendants. ........................................................................................ 10

    B.    The Court lacks specific jurisdiction over the GBL Luxembourg Defendants. ........................................................................................ 10

        1.    Plaintiffs cannot establish purposeful direction or availment. .......... 11

        2.    Plaintiffs cannot establish claims arise out of or relate to forum contacts. ...................................................................................... 16

        3.    Exercising jurisdiction over the GBL Luxembourg Defendants would not comport with fair play and substantial justice. ................ 17

    C.    Plaintiffs cannot rely on "alter ego" theory to overcome lack of jurisdiction. ............................................................................................ 18

II.    The Complaint Should Be Dismissed Against GBL Luxembourg Defendants for Inadequate Pleadings. ............................................................... 20

    A.    Plaintiffs' allegations are defective under Rule 8(a)(2). .............................. 20

    B.    Plaintiffs' allegations are insufficient under Rule 12(b)(6). ........................ 21

        1.    Plaintiffs' WARN Act and wage and hour claims fail because the GBL Luxembourg Defendants never employed Plaintiffs. ........ 21

        2.    Plaintiffs' breach of contract claims fail because the GBL Luxembourg Defendants never contracted with Plaintiffs. .............. 29

        3.    Plaintiffs' tortious interference claim fails because the GBL Luxembourg Defendants had right to protect economic interests..... 29

        4.    As Plaintiffs have adequate remedies at law, their Unfair Competition Law claim fails. ............................................................ 30

        5.    Plaintiffs' fraud claim should be dismissed. .................................... 30

CONCLUSION ........................................................................................................................ 30

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adedapoidle-Tyehimba* v. *Crunch, LLC*,
  2013 WL 4082137 (N.D. Cal. Aug. 9, 2013)........................................................ 26

*Am. Tel. & Tel. Co.* v. *Compagnie Bruxelles Lambert*,
  94 F.3d 586 (9th Cir.), *supplemented*, 95 F.3d 1156 (9th Cir. 1996)......................... 10

*Asahi Metal Indus. Co., LTD.* v. *Superior Court of Cal., Solano Cnty.*,
  480 U.S. 102 (1987).......................................................................... 17, 18

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).............................................................................. 21

*Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017)............................................................... 11, 12

*Bobulinski* v. *Dickson*,
  2025 WL 863462 (C.D. Cal. Feb. 20, 2025).................................................... 12

*Bonnette* v. *Cal. Health & Welfare Agency*,
  704 F.2d 1465 (9th Cir. 1983)............................................................... 25, 26

*Boschetto* v. *Hansing*,
  539 F.3d 1011 (9th Cir. 2008)................................................................ 9, 13

*Boucher* v. *Shaw*,
  572 F.3d 1087 (9th Cir. 2009).................................................................. 26

*Bristol-Myers Squibb Co.* v. *Superior Court of Cal., S.F. Cnty.*,
  582 U.S. 255 (2017) ........................................................................ 12 n.6

*Calvert* v. *Huckins*,
  875 F. Supp. 674 (E.D. Cal. 1995).............................................................. 19

*Campanelli* v. *Image First Unif. Rental Serv., Inc.*,
  2016 WL 4729173, at *7 (N.D. Cal. Sept. 12, 2016).......................................... 14

*Cardenas* v. *McLane FoodService, Inc.*,
  2010 WL 11465450 (C.D. Cal. Oct. 25, 2010) .............................................. 14

*Carpenter* v. *Sikorsky Aircraft Corp.*,
  101 F. Supp. 3d 911 (C.D. Cal. 2015).......................................................... 15

*Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Loc. 572, Int'l Bhd.*
  *of Teamsters, AFL-CIO* v. *Weslock Corp.*,
  66 F.3d 241 (9th Cir. 1995)................................................................... 23

ii

*Childress* v. *Darby Lumber, Inc.*,
    357 F.3d 1000 (9th Cir. 2004)................................................................ 23, 24

*Cirino* v. *Ocwen Loan Servicing LLC*,
    815 F. App'x 204 (9th Cir. 2020) ...................................................... 2 n.1, 22

*Cleary* v. *Am. Cap., Ltd.*,
    59 F. Supp. 3d 249 (D. Mass. 2014) ........................................................... 23

*Core-Vent Corp.* v. *Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993)......................................................................... 17

*Davis* v. *Cranfield Aerospace Sols., Ltd.*,
    71 F.4th 1154 (9th Cir. 2023)......................................................................... 13

*Doe* v. *Mahboubi-Fardi*,
    2024 WL 2206640 (C.D. Cal. Jan. 2, 2024) .......................................... 27, 28

*Dollar Tree Stores Inc.* v. *Toyama Partners, LLC*,
    2010 WL 1688583 (N.D. Cal. Apr. 26, 2010) ............................................ 30

*Drake* v. *Toyota Motor Corp.*,
    2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ............................................ 30

*Drone USA, Inc.* v. *Ferro*,
    2018 WL 6242171 (C.D. Cal. Feb. 1, 2018) .............................. 12, 13, 16

*Fernandez* v. *Tox Corp.*,
    677 F. Supp. 3d 1089 (C.D. Cal. 2023).................................................. 2 n.1

*Fujitsu-ICL Sys., Inc.* v. *Efmark Serv. Co. of Ill.*,
    2000 WL 1409760 (S.D. Cal. June 29, 2000)............................................ 16

*Gonzalez* v. *State*,
    515 P.3d 318 (Nev. 2022)............................................................................ 26

*Harrington* v. *Cracker Barrel Old Country Store, Inc.*,
    142 F.4th 678 (9th Cir. 2025)................................................................ 12 n.6

*Hill* v. *Pac. Mar. Ass'n*,
    2025 WL 416159 (N.D. Cal. Feb. 6, 2025)................................................ 21

*In re APA Transp. Corp. Consol. Litig.*,
    541 F.3d 233 (3d Cir. 2008) ........................................................................ 24

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008)....................................................................... 21

*In re HMR Foods Holding, LP*,
    602 B.R 855 (D. Del. Bankr. 2019) ...................................................... 24, 25

iii

*In re United Furniture Indus., Inc.*,
    2025 WL 1145063 (Bankr. N.D. Miss. Apr. 15, 2025) ........................................ 25

*Int'l Shoe Co.* v. *State of Washington*,
    326 U.S. 310 (1945) ........................................................................................ 17

*Jiang* v. *Kobe Japanese SteakHouse, Inc.*,
    2024 WL 421995 (D. Mass. Feb. 5, 2024) ........................................................ 26

*Kramer Motors, Inc.* v. *Brit. Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) ........................................................................ 13

*Lakeside Bridge & Steel Co.* v. *Mountain State Constr. Co.*,
    597 F.2d 596 (7th Cir. 1979) ........................................................................ 17

*Lesnik* v. *Eisenmann SE*,
    374 F. Supp. 3d 923 (N.D. Cal. 2019) ............................................................ 27

*Littleton* v. *Experian Info. Sols., Inc.*,
    2015 WL 4638308 (N.D. Cal. Aug. 5, 2015) .................................................... 21

*Luna* v. *Universal Studio City Prods. LLLP*,
    2013 WL 12308198 (C.D. Cal. Aug. 27, 2013) ........................................... 22 n.8

*Martinez* v. *Combs*,
    231 P.3d 259 (Cal. 2010) .......................................................................... 27, 28

*North* v. *Superior Hauling & Fast Transit, Inc.*,
    2019 WL 8163808 (C.D. Cal. Aug. 23, 2019) ........................................... 28, 29

*Ochoa* v. *McDonald's Corp.*,
    133 F. Supp. 3d 1228 (N.D. Cal. 2015) .......................................................... 28

*Ortiz* v. *Consol. Edison Co. of N.Y., Inc.*,
    2024 WL 3086161 (S.D.N.Y. June 7, 2024), *report and recommendation adopted*,
    2024 WL 3105686 (S.D.N.Y. June 24, 2024) ........................................... 26, 27

*Overholt* v. *Airista Flow Inc.*,
    2018 WL 355231 (S.D. Cal. Jan. 10, 2018) .............................................. 13, 14

*Pankow Constr. Co.* v. *Advance Mortg. Corp.*,
    618 F.2d 611 (9th Cir. 1980) ........................................................................ 30

*Paz* v. *Piedra*,
    2012 WL 12518495 (S.D.N.Y. Jan 12, 2012) ................................................ 26

*Pearson* v. *Component Tech. Corp.*,
    247 F.3d 471 (3d Cir. 2001) .......................................................................... 24

*Pro Water Sol., Inc.* v. *Angie's List, Inc.*,
    457 F. Supp. 3d 845 (C.D. Cal. 2020) ............................................................ 29

iv

*Ranza* v. *Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015)........................................................................ 19, 20

*Rashidi* v. *Veritiss, LLC*,
    2016 WL 5219448 (C.D. Cal. Sept. 19, 2016)........................................................ 11

*Ravelombonjy* v. *Zinsou-Fatimabay*,
    632 F. Supp. 3d 239 (S.D.N.Y. 2022)........................................................ 22 n.8

*Reed* v. *Reliant Life Shares LLC*,
    2025 WL 1850971 (C.D. Cal. Apr. 11, 2025) ........................................................ 21

*S. G. Borello & Sons, Inc.* v. *Dep't of Indus. Rels.*,
    769 P.2d 399 (Cal. 1989) ........................................................................................ 29

*Salvare La Vita Water, LLC* v. *Crazy Bottling Co., LLC*,
    2021 WL 3044163 (9th Cir. July 19, 2021)........................................................ 15

*Schwarzenegger* v. *Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)........................................................................ 10, 11

*Sollberger* v. *Wachovia Sec., LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010) ................................................ 20, 21

*Sonner* v. *Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)........................................................................ 30

*Staley* v. *FSR Int'l Hotels Inc.*,
    775 F. Supp. 3d 720 (S.D.N.Y. 2025)........................................................ 25

*Swartz* v. *KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)........................................................................ 14

*Taylor* v. *Cox Commc'ns Cal., LLC*,
    283 F. Supp. 3d 881 (C.D. Cal. 2017)........................................................ 27

*Valencia* v. *N. Star Gas Ltd. Co.*,
    291 F. Supp. 3d 1155 (S.D. Cal. 2018)........................................................ 28

*Walden* v. *Fiore*,
    571 U.S. 277 (2014) ........................................................................ 11, 12

*Whitaker* v. *Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021)........................................................................ 21

*Wojciechowski* v. *Kohlberg Ventures, LLC*,
    923 F.3d 685 (9th Cir. 2019)........................................................................ 22, 23

*Yamashita* v. *LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023)........................................................................ 10, 16

v

*Zeiger* v. *WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ............................................................ 16 n.7

**Statutes and Rules**

29 U.S.C. § 255(a) ............................................................................................ 25 n.11

29 U.S.C. § 2104(a) .......................................................................................... 25 n.10

FLSA ...................................................................................................................... *passim*

WARN Act .............................................................................................................. *passim*

Cal. Civ. Proc. Code § 410.10 ............................................................................ 9

Cal. Lab. Code .......................................................................................... 22 n.8, 27

Cal. Lab. Code § 201 ............................................................................................ 14

California Business & Professions Code § 17200 ...................................... 8, 14, 30

California WARN Act .......................................................................................... 25

Mo. Rev. St. § 290.080 .................................................................................... 22 n.9

Mo. Rev. St. § 290.110 .................................................................................... 22 n.9

Mo. Rev. St. § 290.502 .................................................................................... 22 n.9

Mo. Rev. St. § 290.505 .................................................................................... 22 n.9

Mo. Rev. St. § 320.215 .................................................................................... 22 n.9

New York Labor Law ....................................................................................... 21 n.8

New York WARN Act ......................................................................................... 25

RI St. § 28-14-14 ............................................................................................... 22 n.9

Tenn. Code § 50-2-103 ..................................................................................... 22 n.9

Tex. Lab. Code § 61.014 ................................................................................... 22 n.9

Phila. Code § 9-1501(2) .................................................................................... 22 n.9

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 20, 21

Fed. R. Civ. P. 12(b)(2) ....................................................................................... 2 n.1

Fed. R. Civ. P. 12(b)(6) .............................................................................. 2 n.1, 21

Local Civil Rule 7-3 ..................................................................................... 9 n.5, 10

**Other Authorities**

DARRYL J. COOKE, PRIVATE EQUITY:  LAW AND PRACTICE 11-69 (5th ed. 2015) ............................ 22

FINACIAL REPORTING COUNCIL, UK CORPORATE GOVERNANCE CODE (2018) ............................ 4 n.3

**PRELIMINARY STATEMENT**

In August 2022, after months of financial turmoil, StreetTeam Software Limited ("StreetTeam UK"), a UK company, shut its doors in a highly publicized business failure.  A month later, Plaintiffs brought this action, on behalf of U.S.-based employees of the StreetTeam UK corporate family, against certain subsidiaries of StreetTeam UK, its founders, and its senior executives—but not StreetTeam UK itself—for violation of various labor laws, breach of contract, and fraud.  Now, nearly three years later, Plaintiffs have named three Luxembourg companies—GBL Capital Coinvest Master Sàrl, GBL Capital Participations Sàrl, and Sienna Investment Managers Luxembourg SA (collectively, the "GBL Luxembourg Defendants")—that invested in and provided financing to StreetTeam UK as defendants in their Second Amended Complaint ("Complaint" or "Compl.").  The GBL Luxembourg Defendants, who lost €70.5 million as a result of the failure, have no place in this suit and are not an appropriate target for recovery.

*First*, this Court lacks personal jurisdiction over the GBL Luxembourg Defendants.  The GBL Luxembourg Defendants are domiciled in Europe and have no employees or operations in the United States.  They only dealt with StreetTeam UK and had no dealings with the U.S. subsidiaries or U.S. employees in California or elsewhere in the United States.  Any actions the GBL Luxembourg Defendants took were pursuant to rights that the underlying loan and investment agreements gave them in regard to StreetTeam UK.  Under clear case law, that is enough to resolve the jurisdictional issue in favor of dismissal—the fact that the effects of those overseas actions may have been felt by California residents, or residents of other states, is not sufficient.  Seeking to bypass this Court's lack of personal jurisdiction, Plaintiffs' efforts to impute contacts to the GBL Luxembourg Defendants under an alter ego theory of jurisdiction similarly fail.

*Second*, Plaintiffs fail to state claims against the GBL Luxembourg Defendants.  Plaintiffs indiscriminately lump together the GBL Luxembourg Defendants with all other defendants, leaving the GBL Luxembourg Defendants with little notice as to what *they* are alleged to have done.  And shotgun pleading aside, Plaintiffs' heap of conclusory statements fails to establish an employer-employee relationship between the GBL Luxembourg Defendants and Plaintiffs.  Without that relationship, Plaintiffs' labor and contractual claims against the GBL Luxembourg Defendants fail.

1

1  This case has proceeded for nearly three years without the GBL Luxembourg Defendants.

2  Involving them now not only will be prejudicial and disruptive, it does not comport with due process

3  or any cognizable theory of liability.

4  ## FACTUAL BACKGROUND[1]

5  ### A.    GBL Luxembourg Defendants

6  Each of the GBL Luxembourg Defendants is a "subsidiary of Groupe Bruxelles Lambert," a

7  European investment holding company headquartered in Belgium.  Compl. ¶ 21; Saussoy Decl. ¶¶ 4–

8  6.  GBL Capital Coinvest Master Sàrl ("Sienna Coinvest") and GBL Capital Participations Sàrl

9  ("Sienna Participations") are each "a Luxembourg private limited liability company (société à

10 responsabilité limitée), with its principal place of business in Strassen, Luxembourg."  Compl. ¶¶ 22–

11 23.  Sienna Coinvest and Sienna Participations have no employees, operations, real property, or

12 offices in the United States.  Saussoy Decl. ¶¶ 9–11.

13 Sienna Coinvest and Sienna Participations' investments were managed by Sienna Investment

14 Managers Luxembourg SA ("Sienna Investment Managers"), a "private investment management

15 arm" for Groupe Bruxelles Lambert.  Compl. ¶ 24.  In 2022, Sienna Investment Managers "had 280

16 employees and a presence in Luxembourg, London, Paris, Hamburg, Frankfurt, Madrid, Amsterdam,

17 Seoul and Zurich."  Ex. 1 (GBL Annual Report 2022) at 132.[2]  Sienna Investment Managers has no

18 employees, operations, real property, or offices in the United States.  Saussoy Decl. ¶¶ 9–11.

19 ### B.    GBL Luxembourg Defendants Invest in StreetTeam UK

20 In 2019, the GBL Luxembourg Defendants began investing capital in StreetTeam UK, a

21 United Kingdom-based business and software development company founded by Callum and Liam

22 Negus-Fancey.  Saussoy Decl. ¶ 12; Ex. 2 (Kroll Statement) at 5.  StreetTeam UK was the parent of

23 ――――――――――――――

24 [1] On the Rule 12(b)(2) motion, this Court "may consider evidence outside of the pleadings, including affidavits submitted by the parties."  *Fernandez* v. *Tox Corp.*, 677 F. Supp. 3d 1089, 1096 (C.D. Cal.

25 2023).  On the Rule 12(b)(6) motion, this Court "may consider matters of public record and documents incorporated by reference" in the Complaint and "need not accept as true" allegations contradicted by

26 facts "judicially noticed by the court."  *Cirino* v. *Ocwen Loan Servicing LLC*, 815 F. App'x 204, 205 (9th Cir. 2020).

27 [2] "Ex." refers to exhibits appended to the declaration of Jonathan Moses.  "Decl. ¶" refers to

28 paragraphs in the declarations of Henry Monkcom and Serge Saussoy.  Internal quotations and citations are omitted unless otherwise noted.

2

several subsidiaries that specialized in events and travel experiences, including Defendants StreetTeam Software LLC d/b/a Pollen, Network Travel Experiences, Inc., and JusExperiences UK Limited.  Ex. 2 at 6 (corporate structure).

The GBL Luxembourg Defendants maintained separate books and records from the StreetTeam UK corporate family, Saussoy Decl. ¶ 28; published separate annual reports and financial statements, Exs. 1 (Groupe Bruxelles Lambert annual report), 3 (StreetTeam UK annual report); and shared no assets with the StreetTeam UK corporate family, Saussoy Decl. ¶ 29.  No employees within the StreetTeam UK corporate family had employment or severance agreements with the GBL Luxembourg Defendants.  *Compare* Saussoy Decl. ¶ 30, *with* Compl. ¶ 134 (general allegation that all "Defendants further entered into severance agreements with certain employees"), ¶ 138 (general allegation that all "Defendants entered into a series of employment agreements with Plaintiffs and members of the Employee Class").  The GBL Luxembourg Defendants did not control StreetTeam UK's day-to-day affairs.  Saussoy ¶ 32.  And there was no overlap between the human resources personnel of the GBL Luxembourg Defendants and the StreetTeam UK corporate family.  *Id.* ¶ 31; *see also* Dkt. No. 184-1 (Plaintiffs' declarations) at 71–73 (identifying Anne Bedi as Chief People Officer).

At all times, the GBL Luxembourg Defendants dealt with StreetTeam UK at arm's-length as investors and, later, as creditors.  Saussoy Decl. ¶ 26; Compl. at 2 (defining the GBL Luxembourg Defendants as "Investor Defendants"), ¶ 82 (referring to the GBL Luxembourg Defendants as an "unsecured creditor").  In December 2021, StreetTeam UK raised Series C financing.  Compl. ¶ 78. Sienna Coinvest participated in the Series C fundraising round alongside six other investors.  *Id.*; Ex. 4 (SSA) at 5.  Sienna Coinvest was the "principal" Series C investor, contributing approximately $30 million of the nearly $54 million capital raised.  Ex. 4 (SSA) at 4–5; Compl. ¶ 78.  Following that financing round, Sienna Coinvest owned 29.2% of StreetTeam UK's outstanding shares and Sienna Participations continued to hold 3.6%, pursuant to their investments in the company.  Saussoy Decl. ¶ 14.  The remainder of StreetTeam UK's shares were held by dozens of other shareholders.

StreetTeam UK's Series C financing was memorialized in a series of documents.  Among them was the Amended and Restated Subscription and Shareholders' Agreement (the "SSA"), an

agreement between the Series C investors, founders, lenders, existing shareholders, and StreetTeam UK.  Compl. ¶ 79 (incorporating by reference the SSA); Ex. 4 (SSA) at 4.  The SSA stated that it was "governed by. . . English law" and that the "courts of England will have exclusive jurisdiction to settle any claim, dispute or issue (including non-contractual claims) which may arise out of or in connection with this agreement."  *Id.* at 27.  The SSA set forth parameters for the composition of the StreetTeam UK board.  *Id.* at 13–17.  Sienna Coinvest—like other investors—"received the right to appoint a member of StreetTeam UK's board of directors."  *Id.*; Compl. ¶ 79.

The December 2021 SSA provided the directors with powers relevant to their oversight function and the investor directors, in particular, with certain approval rights.  For example, in the twelve months after completion of Series C obligations, the StreetTeam UK board was empowered to constitute and maintain a "Remuneration Committee" comprising the "Chairman, CEO, and two of the Investor Directors" to "determine the emoluments from time to time of the Group's employees and directors," including the founders.  Ex. 4 (SSA) at 10; Compl. ¶ 79.  Such committees are standard and intended to protect corporate assets from overpayment to senior management.[3]  In any event, the GBL Luxembourg Defendants' representative on the StreetTeam UK board never served on any such committee.  Saussoy Decl. ¶ 17.  The December 2021 SSA also identified "[m]atters requiring Investor Majority Board Approval" similarly aimed at protecting corporate funds, which included "the grant of salaries or bonuses" at StreetTeam UK "in excess of $250,000," the "hiring or firing" of StreetTeam UK's CEO, any new "borrowings of over $250,000" by StreetTeam UK, and "any material change to the" principal business of StreetTeam UK.  Ex. 4 (SSA) at 37; Compl. ¶ 79.

### C.     GBL Luxembourg Defendants Extend Loans to StreetTeam UK

In the months following the Series C financing, StreetTeam UK continued to have financial difficulties.  Compl. ¶¶ 53–57.  On April 14, 2022, Sienna Coinvest and StreetTeam UK entered into a Loan Note Subscription Agreement, in which Sienna Coinvest agreed to lend $25 million to StreetTeam UK as an unsecured creditor.  Saussoy Decl. ¶ 18; Compl. ¶¶ 81–82 (incorporating by reference loan agreements); Ex. 5 (Loan Agreement).  Like the SSA, the loan agreement was

---

[3] *See* FINANCIAL REPORTING COUNCIL, UK CORPORATE GOVERNANCE CODE 2018, at 13–15,  (2018), *available at* https://media.frc.org.uk/documents/UK_Corporate_Governance_Code_2018.pdf.

governed by English law and identified the courts of England as having exclusive jurisdiction.  Ex. 5 (Loan Agreement) at 9.  As part of that loan agreement, StreetTeam UK agreed to comply with certain "undertakings" that would give Sienna Coinvest more insight into StreetTeam UK's financial performance and unusual expenditures in order to protect the GBL Luxembourg Defendants' position as creditor and investor.  *Id.* at 3.  StreetTeam UK also agreed to "seek the written approval of the Investor . . . for any single item of Group Company expenditure of US$50,000 or more."  *Id.*

In connection with the April 2022 loan, the December 2021 SSA was also amended.  Compl. ¶ 83 (incorporating by reference the amendment to SSA).  The amendment to the SSA increased the number of persons that the GBL Luxembourg Defendants could appoint to the StreetTeam UK board from one person to three persons.  Ex. 6 (Amendment to SSA) at 2.  The GBL Luxembourg Defendants never exercised that right.  From December 2021 through June 2022, only one representative from the GBL Luxembourg Defendants ever served on the StreetTeam UK board.  Saussoy Decl. ¶ 16.  And that representative stopped serving as of June 30, 2022.  *Id.*

On May 29, 2022, StreetTeam UK wrote a letter to Sienna Coinvest advising it of "a payroll shortfall of approximately $950k" and "asking Sienna to fund the Payroll Shortfall" for "the Company to be able to make payroll on 31 May 2022 and allow the Goldman Sachs process to continue."  Ex. 7 (May 29 Letter) at 2–3.  The "Goldman Sachs process" referred to StreetTeam UK's engagement of Goldman Sachs to consider a sale of the corporate group.  *Id.* at 1.  The Goldman Sachs process was "dependent on the Company continuing to trade on a solvent basis."  *Id.* at 1.  The letter went on to state, "if the Company is able to receive the Payroll Shortfall from Sienna then it appears that there is a reasonable prospect that the Company can trade through the current crisis."  *Id.* at 3.

In response to StreetTeam UK's request, Sienna Coinvest advised that it was "disappointed to be made aware that the Company's financial position has deteriorated significantly in the short period following Sienna's investment of $25 million in April 2022" and "surprised to be made aware of the Payroll Shortfall."  Ex. 8 (May 30 Letter).  Sienna Coinvest nonetheless agreed to lend StreetTeam UK an additional $1 million.  *Id.*  In exchange, StreetTeam UK agreed to conditions designed to provide Sienna Coinvest with more insight into the financial position of StreetTeam UK.  Ex. 9 (Loan

1    Agreement) at 3–4.  This agreement was memorialized in a Loan Note Subscription Agreement

2    between Sienna Coinvest and StreetTeam UK governed by English law.  *Id.* at 8; Compl. ¶¶ 81–82

3    (incorporating by reference loan agreement).

4          **D.      Negus-Fancey Brothers and Ellis Navigate Ongoing Financial Turmoil**

5          StreetTeam UK continued to experience financial turmoil and, on several occasions, requested

6    further assistance from the GBL Luxembourg Defendants.  Monkcom Decl. ¶ 7; Saussoy Decl. ¶ 20.

7    The GBL Luxembourg Defendants declined to provide further funding or financing to StreetTeam

8    UK.  *Id.*; *see also* Ex. 10 (advising James Ellis that "Sienna is not in a position to put in additional

9    funding"), Ex. 11 (advising StreetTeam UK general counsel that "as mentioned on a number of

10   occasions . . . there will be no further support from Sienna").

11         By June 30, 2022, all directors of StreetTeam UK other than individual defendants Callum

12   Negus-Fancey, Liam Negus-Fancey, and James Ellis resigned, including the representative of the

13   GBL Luxembourg Defendants.  Compl. ¶ 87 ("[B]y July of 2022, Pollen's entire board had resigned,

14   except for the Individual Defendants."); Ex. 3 (StreetTeam UK Annual Report) at 4 (identifying

15   resignation dates).  Contrary to Plaintiffs' allegation that "[a]s a result [of the resignations] . . . the

16   board lacked a quorum and could not take any action," Compl. ¶ 87, StreetTeam UK's public filings

17   confirm that from July 1, 2022 on, the three remaining directors—who were also management—made

18   consequential decisions and actions regarding the business.  The Negus-Fancey brothers and Ellis

19   engaged distressed business specialist Kroll on July 5, 2022 "to complete an accelerated sales

20   process," and the "business was marketed for sale . . . upon the approval of the Directors and

21   [StreetTeam UK's] Secured Creditor," Global Growth Capital S.A.R.L.—*i.e.*, not the GBL

22   Luxembourg Defendants.  Ex. 2 (Kroll Statement) at 3.  When that accelerated sale process failed to

23   generate a buyer, the Negus-Fancey brothers and Ellis "took steps to enter the Company into

24   Administration" (*i.e.*, corporate insolvency proceedings in the UK), "sought independent advice,"

25   "instigated insolvency proceedings," and appointed administrators on August 16, 2022.  *Id.* at 3, 7, 8.

26   *See also* Ex. 12 (email from Callum Negus-Fancey discussing sales negotiations conducted by

27   StreetTeam UK and stating "[w]e have hired Kroll").

28

6

In the period following the resignation of the GBL Luxembourg Defendants' representative from the StreetTeam UK board, the GBL Luxembourg Defendants' insight into StreetTeam UK cratered.  Monkcom Decl. ¶ 6.  As set forth in the declaration of Henry Monkcom, a principal point of contact with StreetTeam UK for the GBL Luxembourg Defendants during this time, StreetTeam UK provided *de minimis* information regarding the company's plans, prospects, and financial position.  *Id.*  The GBL Luxembourg Defendants were never informed by StreetTeam UK that employees would not in fact be paid.  *Id.*; Saussoy Decl. ¶ 21.  Indeed, in one of the few updates from StreetTeam UK that the GBL Luxembourg Defendants did receive during this time, Callum Negus-Fancey informed the GBL Luxembourg Defendants that "we needed 4 levers to go our way to meet US payroll, 3 have, we will know on the last one late and then be able to - it *seems likely this will happen*."  Ex. 12 (emphasis added).

At all relevant times, the GBL Luxembourg Defendants never directed or otherwise agreed for StreetTeam UK to continue trading despite an inability to pay its employees.  *Compare* Monkcom Decl. ¶ 8, *and* Saussoy Decl. ¶ 22, *with* Compl. ¶ 88.  The GBL Luxembourg Defendants did not lay off any employee in the StreetTeam UK corporate family or withhold any of their wages, benefits, or reimbursements, nor could they as an investor and creditor.  *Compare* Monkcom Decl. ¶¶ 9–10, *and* Saussoy Decl. ¶ 23, *with* Compl. ¶¶ 85, 89.  And representatives of the GBL Luxembourg Defendants made no statements to members of the Wage Class or Layoff Class regarding payment of wages or layoffs.  *Compare* Monkcom Decl. ¶ 11, *and* Saussoy Decl. ¶ 25, *with* Compl. ¶ 134.  Nor did the GBL Luxembourg Defendants direct StreetTeam UK to enter administration.  Monkcom Decl. ¶ 12; Saussoy Decl. ¶ 33.  To date, the GBL Luxembourg Defendants have not received a return on their investment in StreetTeam UK and have not received any distributions from the StreetTeam UK's insolvency proceedings, where they are a creditor.  Saussoy Decl. ¶ 34.  Nor do they expect to; instead they have recognized a loss of €70.5 million.  *Id.* ¶ 36.  In December 2023, pursuant to an order by the High Court of Justice, Business and Property Courts of England and Wales, StreetTeam UK's administration ended and liquidators were appointed to wind up the company.  Ex. 13.  In a progress report regarding the wind-up, the joint liquidators of StreetTeam UK advised that they anticipated "insufficient realisations to enable a distribution to the unsecured creditors of the Company."  Ex. 14

7

at 10.  To the extent there are any "realisations," StreetTeam UK's secured creditor and primary preferential creditors' claims "consist[ing] of employee claims for arrears of pay, holiday pay and pension arrears" will take priority.  *Id.* at 9; *see also* Compl. ¶ 35 ("Plaintiffs and class members hold a priority, secured claim . . . .").

### E.   After Years of Litigating Claims, Plaintiffs Move for Leave to Amend Complaint Adding GBL Luxembourg Defendants

Since the onset of this litigation in 2022, Plaintiffs have had access to StreetTeam UK's public filings on Companies House, a UK government website, which disclosed the Sienna Coinvest and Sienna Participations as shareholders and Sienna Coinvest as an unsecured creditor of StreetTeam UK.  Ex. 15 (Confirmation Statement) (disclosing shareholders); Ex. 2 (Kroll Statement) (disclosing creditors).  And yet, for years, Plaintiffs litigated this action without naming the GBL Luxembourg Defendants as defendants or even seeking third-party discovery from them.  In their absence, Plaintiffs, facing defendants without counsel and others who failed to appear, have amended their complaint; certified classes; obtained a default judgment against StreetTeam Software, LLC, Network Travel Experiences, Inc., and JusExperiences UK Limited; sought limited document discovery; and deposed Callum Negus-Fancey and James Ellis, again without counsel, let alone counsel for any of the GBL Luxembourg Defendants.  And most recently, Plaintiffs secured a summary judgment ruling finding that StreetTeam Software, LLC and Network Travel Experiences, Inc. "fail[ed] to pay wages, reimbursements, and wages due at termination to members of Wage Class and the state-based subclasses, in violation of state law and the California Unfair Competition Law"; "fail[ed] to pay wages" in violation of the FLSA; and "fail[ed] to provide notice of a mass layoff on August 10, 2022" in violation of the "federal WARN Act and state mini-WARN Acts."  Dkt. No. 206 at 2.  Plaintiffs never obtained non-public documents from StreetTeamUK or its administrator, which might have given them a complete picture of the events at issue.[4]

Then, in July 2025, Plaintiffs served the GBL Luxembourg Defendants with their amended complaint naming them as defendants to the litigation.  Plaintiffs added new paragraphs regarding the GBL Luxembourg Defendants specifically, but left the majority of their complaint untouched.  Dkt.

---

[4] The GBL Luxembourg Defendants do not know if Plaintiffs took steps to ensure that these corporate documents would be preserved or whether evidence has been lost, prejudicing their defenses.  Dkt.

No. 183-1 (redline of Complaint).  As a result, all previously asserted allegations referring to "Defendants" now capture the GBL Luxembourg Defendants and all previously asserted causes of action are being levied against the GBL Luxembourg Defendants.[5]

## ARGUMENT

Plaintiffs' allegations against the GBL Luxembourg Defendants should be dismissed in their entirety.  Plaintiffs have not satisfied—and cannot satisfy—their burden of establishing that this Court has personal jurisdiction over the GBL Luxembourg Defendants.  And even if Plaintiffs could establish jurisdiction, their pleadings improperly lump together all defendants and fail to state any claim against the GBL Luxembourg Defendants upon which relief can be granted.

**I.** **The Complaint Should Be Dismissed Against the GBL Luxembourg Defendants for Lack of Personal Jurisdiction.**

"California's long-arm statute is co-extensive with federal standards," so this Court may only "exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto* v. *Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see* Cal. Civ. Proc. Code § 410.10. "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016.  On a motion to dismiss for lack of personal jurisdiction, plaintiffs "bear[] the burden of establishing that jurisdiction is proper." *Id.* at 1015.  Here, Plaintiffs cannot—and have not—met their burden.  The GBL Luxembourg Defendants are "at home" in Luxembourg, and Plaintiffs are not arguing that general jurisdiction is proper.  The GBL Luxembourg Defendants are likewise not subject to specific jurisdiction, as Plaintiffs' allegations against them amount to nothing more than a recitation of their status and rights as investors and creditors of non-party, UK-based StreetTeam UK, and otherwise allege actions directed towards that UK entity, which is legally insufficient.  While not necessary to resolve this motion in favor of dismissal given that the GBL Luxembourg Defendants' actions were all directed towards the UK entity, many of those alleged actions are nonetheless factually controverted and impermissibly conclusory.

---

[5] Plaintiffs' Complaint asserts all twelve causes of action against the GBL Luxembourg Defendants. Following a conference of counsel pursuant to Local Civil Rule 7-3, Plaintiffs advised they are not asserting their fraud claim (Count 11) against the GBL Luxembourg Defendants.

As the Ninth Circuit has reminded in connection with a statute (CERCLA) that has similarly broad remedial purposes to the WARN Act, that is not a sufficient reason to exercise jurisdiction. *Am. Tel. & Tel. Co.* v. *Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.), *supplemented*, 95 F.3d 1156 (9th Cir. 1996) ("Even if the requirement of personal jurisdiction allows a parent corporation to avoid liability, and thus undercuts [the statute's] sweeping purpose . . . liability is not to be conflated with amenability to suit in a particular forum.").

### A.    The Court lacks general jurisdiction over the GBL Luxembourg Defendants.

This Court may exercise general jurisdiction over the GBL Luxembourg Defendants only if their "contacts with the forum state" are "so continuous and systematic as to render [them] essentially at home." *Yamashita* v. *LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023).  As the Complaint acknowledges, each of the GBL Luxembourg Defendants' principal place of business, or "home," is Strassen, Luxembourg.  Compl. ¶¶ 22–24.  Following a conference of counsel pursuant to Local Civil Rule 7-3, Plaintiffs confirmed they are not arguing that this Court has general jurisdiction over the GBL Luxembourg Defendants.

### B.    The Court lacks specific jurisdiction over the GBL Luxembourg Defendants.

Plaintiffs fare no better with specific jurisdiction.  To establish specific jurisdiction, Plaintiffs must satisfy the first two prongs of the specific jurisdiction inquiry:  "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws" and "(2) the claim must be one which arises out of or relates to the defendant's forum-related activities." *Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  If Plaintiffs "succeed[] in satisfying both of the first two prongs, the burden then shifts to the [GBL Luxembourg Defendants] to 'present a compelling case' that the exercise of jurisdiction would not be reasonable" under the third prong of the test:  "(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Id.*

10

1    Plaintiffs cannot meet their burden on either of the first two prongs.  But even if Plaintiffs

2    could satisfy their burden on the first two prongs, the third prong of the specific jurisdiction analysis

3    militates against exercising jurisdiction over the GBL Luxembourg Defendants.

4                    **1.    Plaintiffs cannot establish purposeful direction or availment.**

5    The first prong of the specific jurisdiction analysis requires Plaintiffs to show purposeful

6    direction or purposeful availment.  *Id*.  The "purposeful direction analysis . . . is most often used in

7    suits sounding in tort," whereas the "purposeful availment analysis is most often used in suits

8    sounding in contract." *Id.*  Labor claims like those alleged here are not easily categorized as contract

9    or tort disputes.  *See, e.g.*, *Rashidi* v. *Veritiss, LLC*, 2016 WL 5219448, at *5 (C.D. Cal. Sept. 19,

10    2016) (alleged violations of California Labor Code "are neither tort nor contract claims").  But

11    regardless of the test that's applied, Plaintiffs cannot establish that this Court has specific jurisdiction

12    over the GBL Luxembourg Defendants.

13    *First*, Plaintiffs cannot show that the GBL Luxembourg Defendants directed their conduct

14    towards the relevant forum.  Under the purposeful direction test, Plaintiffs must show that the GBL

15    Luxembourg Defendants: "(1) committed an intentional act, (2) expressly aimed at the forum state,

16    (3) causing harm that the [entities] know[] is likely to be suffered in the forum state." *Axiom Foods,*

17    *Inc.* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).  Plaintiffs' allegations regarding the

18    GBL Luxembourg Defendants are, at their core, that the GBL Luxembourg Defendants were

19    investors and creditors of StreetTeam UK, a non-party, UK-based entity; that, by virtue of their

20    investor and creditor agreements with StreetTeam UK, the Luxembourg-based entities had certain

21    rights to oversee or even influence StreetTeam UK's business and financial performance; and that by

22    exercise of those rights, Plaintiffs were damaged.  Compl. ¶ 77 ("Sienna Participations and Sienna

23    Coinvest were at all relevant times major debt and equity investors in StreetTeam UK"), ¶¶ 78–79

24    (describing investment, related agreements, and rights therein), ¶¶ 81–84 (describing financing,

25    related agreements, and rights therein), ¶ 85 (describing action as being consistent with powers in

26    "investment agreements").  Even if the exercise of those rights vis-à-vis the UK entity led to job

27    losses in California or elsewhere in the United States, that is insufficient.

28    As the Supreme Court "made clear" in *Walden* v. *Fiore*, 571 U.S. 277 (2014), courts "must

11

1   look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a

2   plaintiff's connections to a forum." *Axiom Foods, Inc*., 874 F.3d at 1069.  Here, the GBL

3   Luxembourg Defendants had no contacts with the forum itself—they acted pursuant to their

4   agreements with a UK entity—and the mere fact that Plaintiffs happened to experience injuries in

5   California changes nothing.  As this Court has recently explained, "[w]ith respect to the 'express

6   aiming' prong of the effects test, 'something more' is required than a 'foreign act with foreseeable

7   effects in the forum state.'" *Bobulinski* v. *Dickson*, 2025 WL 863462, at *7 (C.D. Cal. Feb. 20, 2025)

8   (holding no personal jurisdiction over creditor that pushed foreign debtor to enter liquidation).[6]

9       The purposeful direction analysis in *Drone USA, Inc.* v. *Ferro* of a foreign lender's conduct

10  towards a debtor with an employee in California is instructive.  2018 WL 6242171 (C.D. Cal. Feb. 1,

11  2018).  There, an individual named Ferro brought claims against a Cayman Island-based fund under

12  various labor laws, as here.  *Id.* at *1.  The fund "lent 'substantial sums' of money" to the entity with

13  which Ferro had an employment agreement, but the fund had "no employees in California," did "not

14  own or lease any real property in California," and did "not advertise to, solicit, or target California

15  residents."  *Id.*  Ferro claimed the fund persuaded his employer to terminate his employment

16  agreement to improve its ability to service its debt; that the fund "knew that the contract with which it

17  was interfering was a California contract, with a California employee, [who] was performing services

18  from California"; and "that the brunt of the harm would be felt in California."  *Drone USA, Inc.*,

19  2018 WL 6242171, at *4.  In other words, as Plaintiffs allege here, the fund allegedly "directed"

20  (Compl. ¶ 89) the termination of Ferro.  But the fund's purported awareness that Ferro worked from

21  California was insufficient to show that the fund had "expressly aimed" its conduct towards the

22  forum.  *Id.*  Knowledge of Ferro's contact with California showed "only" that:  (1) the foreign fund

23  knew of Ferro's "strong forum connections"; and (2) that he "suffered foreseeable harm in [the

24  forum]."  *Id.*  Under *Walden* and its progeny, it was "improper to allow such contacts to confer

25

26  _____

    [6] Moreover, demonstrating the significant complications of bringing the GBL Luxembourg
27  Defendants into this case, in FLSA cases proceeding by collective action, Defendants must have
    sufficient contacts with each of the forums where class members were employed.  *Harrington* v.
28  *Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 685 (9th Cir. 2025) ("the *Bristol-Myers* claim-
    by-claim analysis for specific personal jurisdiction applies in FLSA collective actions").

1    specific jurisdiction." *Id.*

2          The court in *Drone USA* further explained that because the fund's "incentive to terminate

3    Ferro would have been the same regardless of whether he worked in California or any other state,"

4    "the fact that Ferro happened to work in California" was "random, fortuitous, or attenuated" and did

5    not meet the threshold of purposeful direction. *Id.* So too, here. Even if the GBL Luxembourg

6    Defendants' actions as investors and lenders of StreetTeam UK interfered with the employment of

7    California employees, that is not purposeful direction. There is no allegation that the GBL

8    Luxembourg Defendants targeted California-based employees over any others in the world.

9          *Second*, Plaintiffs also cannot satisfy the purposeful availment test, which requires them to

10   establish that the GBL Luxembourg Defendants "purposefully avail[ed]" themselves "of the privilege

11   of conducting activities within the forum State, thereby invoking the benefits and protections of its

12   laws, and in return submit[ting] to the burdens of litigation in the State." *Davis* v. *Cranfield*

13   *Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023). There must be some "deliberate forum

14   protection-invoking" act, *Kramer Motors, Inc.* v. *Brit. Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir.

15   1980), and the "deliberate creation of a 'substantial connection' with the forum state," *Davis* 71 F.4th

16   at 1165. Nothing that Plaintiffs allege regarding the agreements reflects the GBL Luxembourg

17   Defendants' intent to avail themselves of California's laws. The GBL Luxembourg Defendants

18   entered into investment and loan agreements with a UK entity, which "did not create any ongoing

19   obligations . . . in California." *Boschetto*, 539 F.3d at 1017 (finding agreement "insufficient to have

20   created a substantial connection with California"). "Nor did performance of the contract[s] require

21   the [GBL Luxembourg Defendants] to engage in any substantial business in California." *Id.*

22   Moreover, "[n]one of the contract terms invoke the laws of [California]." *Davis*, 71 F.4th at 1164.

23   "Instead, by [their] terms, [English] law governs the contract's enforcement and interpretation. The

24   agreement[s] also select[] [the courts of England] as its choice of forum"—not California. *Id.*

25         That the GBL Luxembourg Defendants were investors and creditors in StreetTeam UK,

26   Compl. ¶¶ 21–24, 77, 82, and that Plaintiffs were never employed by the GBL Luxembourg

27   Defendants likewise defeats jurisdiction under this test. Plaintiffs' failure to allege that they were

28   "actually employed" by the GBL Luxembourg Defendants "is fatal under *both* the purposeful

13

1  availment and purposeful direction approaches." *Overholt* v. *Airista Flow Inc.*, 2018 WL 355231, at

2  *15 (S.D. Cal. Jan. 10, 2018) (emphasis added).  In *Overholt*, like here, the plaintiff asserted failure to

3  pay wages in violation of Cal. Lab. Code § 201 and unfair business practices in violation of California

4  Business & Professions Code § 17200 against an entity that had not "actually employed" plaintiff, but

5  rather was the parent of the subsidiary that did.  *Id.*  Like here, the entity was a "separate legal

6  entit[y]" from plaintiff's employer, was "not registered to conduct business in California," and had

7  not "employed employees in California."  *Id.*  Ultimately, as the result should be here, the court

8  determined that it lacked personal jurisdiction and dismissed the entity.  *Id.*; *see also Cardenas* v.

9  *McLane FoodService, Inc.*, 2010 WL 11465450, at *5 (C.D. Cal. Oct. 25, 2010) (dismissing

10  nonresident parent entity where "uncontroverted evidence conclusively shows that [the parent] does

11  not pay the salaries of its subsidiaries' employees").

12        While Plaintiffs never allege they were "actually employed" by the GBL Luxembourg

13  Defendants, Plaintiffs conclude all defendants, *i.e.*, including the GBL Luxembourg Defendants, are

14  "employers" for liability purposes in their causes of action.  Such "legal conclusions unsupported by

15  specific factual allegations will not satisfy" the "pleading burden" for jurisdiction.  *Swartz* v. *KPMG*

16  *LLP*, 476 F.3d 756, 766 (9th Cir. 2007).  Instead, Plaintiffs' "'single enterprise' and 'joint employer'

17  theories are bases for liability, not tests for personal jurisdiction."  *Campanelli* v. *Image First Unif.*

18  *Rental Serv., Inc.*, 2016 WL 4729173, at *7 (N.D. Cal. Sept. 12, 2016).  Being "employers" for

19  liability purposes "does not establish that [these] separate, non-resident corporate entit[ies] without

20  minimum contacts can be haled into" this Court.  *Id.*  "Before a court has any authority to address

21  questions of liability, it must first be satisfied personal jurisdiction over a defendant exists."  *Id.*

22        *Third*, to the extent Plaintiffs contend that the GBL Luxembourg Defendants acted beyond

23  their rights as an investor or creditor, such claims are contradicted by the allegations in the Complaint,

24  suffer from the same jurisdictional infirmity as set forth above in that they concern contacts with the

25  UK entity, and, in any event, are controverted.

26        Plaintiffs allege that the GBL Luxembourg Defendants "direct[ed] the company to make the

27  May 2022 layoffs," Compl. ¶ 85; "directed StreetTeam UK to continue operating the business"

28  despite "knowledge that Pollen was not paying staff and could not pay staff," *id.* ¶ 88; and "directed

14

1   the decision to shutter the companies and make the second round of mass layoffs in August of 2022,"

2   *id.* ¶ 89.  Putting aside that, as the Complaint otherwise acknowledges, the GBL Luxembourg

3   Defendants only had the ability to act pursuant to their rights as creditor or investor, none of those

4   conjectures are true or supported by facts.  As set forth in the declarations of Serge Saussoy and

5   Henry Monkcom, the GBL Luxembourg Defendants never directed StreetTeam UK to stop paying

6   wages and never directed StreetTeam UK to continue trading despite an inability to pay its

7   employees.  Saussoy Decl. ¶ 22; Monkcom Decl. ¶¶ 8-9.  "Disputed allegations in the complaint that

8   are not supported with evidence or affidavits cannot establish personal jurisdiction."  *Salvare La Vita*

9   *Water, LLC* v. *Crazy Bottling Co., LLC*, 2021 WL 3044163, at *1 (9th Cir. July 19, 2021); *see also*

10  *Carpenter* v. *Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 922 (C.D. Cal. 2015) ("[C]ourts may not

11  assume the truth of allegations in a pleading which are contradicted by affidavit").

12          Likewise, there is no basis to accept Plaintiffs' conclusory allegation that during the period

13  before it entered into administration, "StreetTeam UK began taking direct instruction from Sienna

14  about how to operate the business, including the business of the Entity Defendants."  *Compare*

15  Compl. ¶ 87, *with* Monkcom Decl. Decl. ¶ 6 (significant reduction of information provided by

16  StreetTeam UK in July), *and* Saussoy ¶ 27 ("GBL Luxembourg Defendants had no dealings with

17  StreetTeam UK's U.S. subsidiaries"), *and id.* ¶ 32 ("GBL Luxembourg Defendants did not control

18  or manage StreetTeam UK's day-to-day affairs").  As Plaintiffs concede, the GBL Luxembourg

19  Defendants did not have a single representative on the StreetTeam UK board when employee wages

20  were withheld from July 1, 2022 through August 10, 2022 and when the August 2022 layoffs

21  occurred.  Compl. ¶ 87.  In fact, during that period, the Negus-Fancey brothers and Ellis were

22  operating the business.  *See*, *e.g.*, Ex. 12 (describing their operation of the business and control over

23  sale negotiations); Dkt. No. 184-1 at 158 (chief of staff declaring "Pollen's operations in the U.S.,

24  including employment matters, were dictated by the leadership team" comprising the Negus-Fancey

25  brothers and James Ellis).  In addition, the GBL Luxembourg Defendants maintained an arm's-length

26  relationship with StreetTeam UK on the issue of payroll.  In May 2022, they provided an additional

27  loan, documented by a further loan agreement, at StreetTeam UK's request so it could meet payroll.

28

1    Exs. 8-9.  In July, they declined to do so in response to further requests, while being told that U.S.

2    payroll would likely be met.  Exs. 11-12.

3        At bottom, there is no basis to hale a foreign entity acting pursuant to a relationship it has with

4    another foreign entity into a U.S. court even if the results of those actions are felt in a domestic

5    forum.[7]  That those actions were pursuant to rights and obligations established in arm's-length

6    agreements reached and performed overseas is all the more reason why jurisdiction is not proper.

7        **2.      Plaintiffs cannot establish claims arise out of or relate to forum contacts.**

8        The second prong of the personal jurisdiction analysis requires that Plaintiffs' claims "arise

9    out of or relate to [the GBL Luxembourg Defendants'] contacts with the forum."  *Yamashita*, 62 F.4th

10   at 503.  A claim "arise[s] out of" forum contacts when the contacts are a "but for" cause of the

11   claimed injury, such that a "direct nexus exists between a defendant's contacts with the forum state

12   and the cause of action."  *Id.* at 504.  Meanwhile, "relate to does not mean anything goes"—it

13   "requires a close connection between contacts and injury."  *Id.* at 506.  Again, Plaintiffs cannot meet

14   this test.  Plaintiffs allege that the GBL Luxembourg Defendants took actions pursuant to their

15   relationship with the UK entity.  That those actions resulted in unpaid wages and layoffs in California,

16   or elsewhere in the United States, is not a sufficient connection to justify the exercise of jurisdiction.

17   *Drone USA, Inc.*, 2018 WL 6242171, at *1.

18       But even if the GBL Luxembourg Defendants' contacts were properly construed as contacts

19   with California, the only reason those contacts would be with California, and not some other state or

20   country, is because some Plaintiffs happened to live there.  Those employees could just as easily have

21   worked in New York (as Plaintiff Geraci did), Nevada (as Plaintiff Bowers did), or somewhere else.

22   Courts have rejected the exercise of jurisdiction where plaintiffs have complete control over the

23   connection between a defendant and the forum state.  *See, e.g.*, *Fujitsu-ICL Sys., Inc.* v. *Efmark Serv.*

24   *Co. of Ill.*, 2000 WL 1409760, at *4 (S.D. Cal. June 29, 2000) ("Defendant's mere knowledge that

25   acts would occur in California does not establish that it purposefully availed itself of the benefits of

26

27   [7] Plaintiffs' other generalized allegations regarding all "Defendants" cannot form the basis for jurisdiction either.  *Zeiger* v. *WellPet LLC*, 304 F. Supp. 3d 837, 848 (N.D. Cal. 2018) ("Plaintiffs

28   must make a *prima facie* showing of jurisdictional facts giving rise to specific jurisdiction over each defendant separately.").

16

the forum."); *Lakeside Bridge & Steel Co.* v. *Mountain State Constr. Co.*, 597 F.2d 596, 603 (7th Cir. 1979) ("[T]he courts of Wisconsin no more had jurisdiction over [foreign purchaser of goods manufactured in Wisconsin] than would the courts of England or Taiwan if [Wisconsin manufacturer] had chosen to have the goods manufactured in either of those places.").

### 3. Exercising jurisdiction over the GBL Luxembourg Defendants would not comport with fair play and substantial justice.

Because Plaintiffs cannot satisfy the first two prongs of the specific jurisdiction inquiry, this Court need not reach the final prong. But even if it did, dragging the GBL Luxembourg Defendants into this litigation would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.* v. *State of Washington*, 326 U.S. 310, 316 (1945). Courts in the Ninth Circuit look to seven factors in assessing whether exercising personal jurisdiction is reasonable: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent Corp.* v. *Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). Here, the factors demonstrate it is not reasonable.

Exercising jurisdiction would require bringing Luxembourg-based corporate entities, which have no operations or employees in the United States and which invested in, and lent money to, a UK-based entity, into California—where they directed no conduct—to defend against claims of wrongdoing that this Court already determined was committed by entirely different entities. Dkt. No. 206. That is plainly unfair, all the more so as it is being done late in proceedings where Plaintiffs faced no represented adversary, meaning the GBL Luxembourg Defendants will have to spend even more to take on the defense of this matter. As the Ninth Circuit explained in *Core-Vent Corp.*, even if "California has a strong interest in providing a forum to those who are injured in its state," that interest "must give way" where "the defendants are individual citizens of a foreign country who lack connections to the United States and whose purposeful interjection into the forum state has been very limited." 11 F.3d at 1490; *see also Asahi Metal Indus. Co., LTD.* v. *Superior Court of Cal., Solano*

1    *Cnty.*, 480 U.S. 102, 116 (1987) ("Considering the international context, the heavy burden on the

2  alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal

3  jurisdiction by a California court over [defendant] would be unreasonable and unfair.").

4        Exercising jurisdiction over the GBL Luxembourg Defendants is also unreasonable because

5  alternative forums—namely, the courts of England—have strong interests in the matters at issue.

6  Administration proceedings for StreetTeam UK have been underway in England for the last three

7  years.  Administration, like bankruptcy in the United States, is a centralized process for the

8  identification, assessment, and ultimate payout (to the extent possible) of claims against a distressed

9  entity.  The administrators of StreetTeam UK have already considered employee claims for "arrears

10  of pay" and deemed them preferential creditors, which have higher priority in the proceedings than

11  the claims of unsecured creditors, *e.g.*, the GBL Luxembourg Defendants.  To the extent Plaintiffs

12  insist on pursuing claims against the GBL Luxembourg Defendants instead of StreetTeam UK, the

13  courts of England are still the more appropriate forum.  The shareholder and loan agreements between

14  the GBL Luxembourg Defendants and StreetTeam UK, which are central to Plaintiffs' allegations

15  against the GBL Luxembourg Defendants, are governed by English law and explicitly state "courts of

16  England will have exclusive jurisdiction."  Ex. 4 at 27; Ex. 5 at 9; Ex. 9 at 8.  Interpreting these

17  contracts and exercising jurisdiction in the United States would disturb the expectations of the parties

18  when they entered into those agreements, offending notions of fair play and substantial justice.

19       **C.**    **Plaintiffs cannot rely on "alter ego" theory to overcome lack of jurisdiction.**

20        To overcome the GBL Luxembourg Defendants' lack of sufficient contacts with the forum,

21  Plaintiffs may rely on some contorted version of the alter ego theory to drag GBL Luxembourg

22  Defendants into this Court.  Plaintiffs previously alleged that StreetTeam UK and its subsidiaries were

23  alter egos operating as a singular "Pollen" group, Compl. ¶¶ 26–36, and now seem to go a level

24  further, suggesting that wholly independent investors and creditors can be swept into Pollen too,

25  regardless of corporate form.  *See, e.g.*, *id.* ¶¶ 36 ("Because they operate as a single enterprise,

26  Defendants are each liable for the debts of the other Defendants."), 84, 93–72.  Whether for

27  jurisdiction or liability or both, there is no basis to do that.

28

1    Under the alter ego theory for jurisdiction, an entity's contacts with the forum state can be

2    attributed to a non-resident entity if plaintiff can "make out a prima facie case (1) that there is such

3    unity of interest and ownership that the separate personalities [of the two entities] no longer exist and

4    (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza* v.

5    *Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).  But "[d]isregarding the corporate entity is recognized

6    as an extreme remedy," reserved for only "exceptional" circumstances. *Calvert* v. *Huckins*, 875 F.

7    Supp. 674, 678 (E.D. Cal. 1995).  No such circumstances are present here.

8    Plaintiffs have presented no evidence that the GBL Luxembourg Defendants and StreetTeam

9    UK corporate family failed to observe corporate formalities as between each other.  *Ranza*, 793 F.3d

10   at 1074 (rejecting alter ego where plaintiff "presented no evidence [entities] fail to observe their

11   respective corporate formalities").  Nor could they.  The GBL Luxembourg Defendants and

12   StreetTeam UK maintained separate books and records, published separate reports and financial

13   statements, shared no assets, and maintained separate human resources departments.  Saussoy Decl.

14   ¶¶ 27–31; *Ranza*, 793 F.3d at 1074 (rejecting alter ego where "[e]ach entity leases its own facilities,

15   maintains its own accounting books and records, enters into contracts on its own and pays its own

16   taxes").  The existence of arm's-length agreements between the GBL Luxembourg Defendants and

17   StreetTeam UK further underscores that the entities are distinct. *Id.* at 1074 (recognizing "proper

18   documentation of transactions between the entities" as observance of corporate formalities).  The

19   correspondence between the entities during StreetTeam UK's period of financial turmoil similarly

20   highlights their separateness.  StreetTeam UK sent letters and emails requesting money, and the GBL

21   Luxembourg Defendants exercised their independent judgment on whether to provide funding.  Exs.

22   7–8, 10–11.

23   In support of their alter ego theory, Plaintiffs may point to their assertions that the GBL

24   Luxembourg Defendants controlled the StreetTeam UK corporate family.  Putting aside that such

25   assertions are conclusory and controverted (*supra* at Section I.B), the Ninth Circuit requires evidence

26   of "*pervasive control*," such as "when a parent corporation dictates *every* facet of the subsidiary's

27   business—from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d

28   at 1073 (emphasis added).  That is a high bar.  In *Ranza*, the Ninth Circuit held that Nike and its

19

wholly owned subsidiary, NEON, were not in an alter ego relationship, even though Nike had a representative on the NEON board and was "heavily involved in NEON's operations," *e.g.*, Nike "exercise[d] control over NEON's overall budget," "ha[d] approval authority for large purchases," was "involved in some hiring decisions," and "require[d] some NEON employees to report to Nike supervisors." *Id.* at 1074  But importantly, Nike did not direct NEON's "routine day-to-day operations" and NEON had "its own human resources division that handles day-to-day employment issues." *Id.* at 1074–75.  Plaintiffs here cannot show that the GBL Luxembourg Defendants dictated "every facet" of StreetTeam UK's "routine day-to-day operations" or its "day-to-day employment issues." *Id.*  To the contrary, Plaintiffs submitted a declaration to this Court from "Chief of Staff, Commercial, of Pollen" stating that "Pollen's *operations* in the U.S., *including employment matters*, were *dictated* by the leadership team" comprising the Negus-Fancey brothers and James Ellis, Dkt. No. 184-1 at 159 (emphasis added), and declarations and exhibits showing that communications to employees regarding wages and layoffs were made by "Pollen's Chief People Officer," who has no affiliation to the GBL Luxembourg Defendants, and Callum Negus-Fancey, *id.* at 33, 159, 196.  The GBL Luxembourg Defendants "did not control or manage StreetTeam UK's day-to-day affairs." Saussoy Decl. ¶ 32.  Piercing the corporate veil is not warranted.

## II.   The Complaint Should Be Dismissed Against GBL Luxembourg Defendants for Inadequate Pleadings.

The Court need not consider Plaintiffs' allegations against the GBL Luxembourg Defendants further.  Lack of jurisdiction is dispositive.  But even if the Court could exercise jurisdiction over the GBL Luxembourg Defendants, Plaintiffs' Complaint should be dismissed for failing to provide adequate notice and failing to state a claim upon which relief may be granted.

### A.   Plaintiffs' allegations are defective under Rule 8(a)(2).

Rule 8(a)(2) requires a "a short and plain statement of the claim showing that the pleader is entitled to relief," which gives a defendant fair notice of the claims against it and its alleged misconduct. Fed. R. Civ. P. 8(a)(2).  Flying in the face of that requirement, Plaintiffs' Complaint is plagued by their "shotgun pleading style," which "deprives [the GBL Luxembourg Defendants] of knowing exactly what they are accused of doing wrong."  *Sollberger* v. *Wachovia Sec., LLC*, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010).

Over and over, the Complaint refers to "Defendants," a monolithic reference to the nineteen separate entities and individuals against whom Plaintiffs bring this action. These "everyone did everything allegation[s]" make it "impossible" for any Defendant to know what exactly it is alleged to have done. *Littleton* v. *Experian Info. Sols., Inc.*, 2015 WL 4638308, at *2 (N.D. Cal. Aug. 4, 2015); *see also Sollberger*, 2010 WL 2674456, at *5. Contributing to the morass, Plaintiffs bring all causes of action against "All Defendants," and "repeat and reallege each of the foregoing [defective] allegations" into each count. *See, e.g.*, Compl. ¶¶ 93–172. This too, is an impermissible practice. *Sollberger*, 2010 WL 2674456, at *5.

Plaintiffs' defective pleadings violate Rule 8(a)(2) and warrant dismissal. *Id.*; *see also Hill* v. *Pac. Mar. Ass'n*, 2025 WL 416159, at *4 (N.D. Cal. Feb. 6, 2025). To the extent Plaintiffs' allegations are not dismissed on this basis, all "conclusory allegations lumping [the GBL Luxembourg Defendants] together with all other Defendants" are nonetheless "insufficient to state a claim." *Reed* v. *Reliant Life Shares LLC*, 2025 WL 1850971, at *3 (C.D. Cal. Apr. 11, 2025).

**B.    Plaintiffs' allegations are insufficient under Rule 12(b)(6).**

**1.    Plaintiffs' WARN Act and wage and hour claims fail because the GBL Luxembourg Defendants never employed Plaintiffs.**

Under Rule 12(b)(6), "only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Whitaker* v. *Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). A claim is plausible if the plaintiff pleads enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Courts must accept well-pleaded facts as true, but need not accept allegations as true that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Here, Plaintiffs allege that the GBL Luxembourg Defendants, as "employers and/or joint employers of Plaintiffs," violated the federal Worker Adjustment and Retraining Notification (WARN) Act (First Cause of Action), state and municipal analogues (Second Cause of Action), and a suite of wage and hour laws (Third, Fourth, Fifth, Sixth, Tenth, and Twelfth Causes of Action).[8]

[8] While not alleged by Plaintiffs, the GBL Luxembourg Defendants can be liable on the Sixth, Tenth,

21

Plaintiffs' conclusory allegations of employer status rest on rights granted to the GBL Luxembourg Defendants in connection with their investments in and loans to StreetTeam UK. Those agreements are incorporated by reference into the Complaint and can, thus, be considered by this Court. *See* Compl. ¶¶ 77–85; *Cirino*, 815 F. App'x at 205. None of those rights, established in these arm's-length agreements, converted the GBL Luxembourg Defendants from investor and creditor to employer. Rather, they are standard provisions used to protect their financial interests. DARRYL J. COOKE, PRIVATE EQUITY: LAW AND PRACTICE 11-69 (5th ed. 2015) ("It is usual for the investor to have 'veto' rights so that the company can only carry out certain transactions with the express approval of the investor. . . . Control provisions over management are a way of reserving major decisions to the investor but leaving the executive directors free to run the business without continuous interferences."); *id.* at 11-90 (describing the appointment of "a director from the investor or nominated by the investor" as a "control[] that investors have been insisting upon for years").

Under every relevant test for "employer" status, the outcome is therefore the same. Given that the GBL Luxembourg Defendants could only act pursuant to these arm's-length agreements, the facts alleged here—including the conclusory allegations that the GBL Luxembourg Defendants either "directed" StreetTeam UK to make layoffs, or were "directly involved in and directed" layoffs or, "at minimum," "conspired with and aided and abetted" those companies in making the layoffs—fail to establish that the GBL Luxembourg Defendants ever employed the Plaintiffs. Accordingly, Plaintiffs fail to state a claim for violations of the WARN Act or the wage and hour laws.[9]

(i)    WARN Act and Mini-WARN Act claims

Only "employers" can be liable for violations of the WARN Act. *See Wojciechowski* v. *Kohlberg Ventures, LLC*, 923 F.3d 685, 688 n.3 (9th Cir. 2019). For purposes of the WARN Act, an

---

and Twelfth Causes of Action only if they are employers. *See Ravelombonjy* v. *Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 258 (S.D.N.Y. 2022) (FLSA and NYLL); *Luna* v. *Universal Studio City Prods. LLLP*, 2013 WL 12308198, at *3 (C.D. Cal. Aug. 27, 2013) (Cal. Lab. Code).

[9] Of the statutes cited by Plaintiffs in support of their mini-WARN Act and wage and hour claims, Compl. ¶¶ 101, 108, 114, 120, many do not provide for private rights of action. *See, e.g.*, Tenn. Code § 50-2-103. Others give rise to time-barred claims. *See* Mo. Rev. St. §§ 290.080, 290.110, 290.502, 290.505; Tex. Lab. Code § 61.014. Some govern conduct not at issue here, such as the "obstruction" of a state department of labor in the performance of its duties, or apply to "employers" in jurisdictions with no relation to the alleged misconduct. *See, e.g.*, RI St. § 28-14-14; Phila. Code § 9-1501(2) (Phila. WARN Act). And one statute applies only to employees of the Missouri state fire marshal. *See* Mo. Rev. St. § 320.215.

22

employer and its creditor or investor may form a single employer, "'depending on the degree of their independence' from one another and considering '(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.'" *Id.* (quoting *Childress* v. *Darby Lumber, Inc.*, 357 F.3d 1000, 1006 (9th Cir. 2004)).  "The law," however, "is not so foolish as to fashion a rule—even under the laudable auspices of the WARN Act—that would prevent an equity investor like [the GBL Luxembourg Defendants] from taking measures to protect or, if necessary, salvage its shareholders' stake in an investment going bad." *Cleary* v. *Am. Cap., Ltd.*, 59 F. Supp. 3d 249, 258 (D. Mass. 2014) ("[A] creditor may exercise very substantial control in an effort to stabilize a debtor and/or seek a buyer so as to recover some or all of its loan or security without incurring WARN liability.").

The Ninth Circuit has "conclude[d] that WARN's obligations indeed can apply to a secured creditor, but only where the creditor operates the debtor's asset as a 'business enterprise' in the 'normal commercial sense.'" *Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Loc. 572, Int'l Bhd. of Teamsters, AFL-CIO* v. *Weslock Corp.*, 66 F.3d 241, 244 (9th Cir. 1995) (quoting U.S. Department of Labor regulations).  But "the notice requirement of WARN will not apply" where that secured creditor "does no more than exercise that degree of control over the debtor's collateral necessary to protect the security interest, and acts only to preserve the business asset for liquidation or sale." *Id.*  This reasoning applies with equal force here when considering rights put in place to protect a financial investment or loan.  Plaintiffs make no allegation that the GBL Luxembourg Defendants took actions beyond what was necessary to protect their financial interests; on the contrary, Plaintiffs allege that the GBL Luxembourg Defendants exercised rights they received pursuant to loan and investment agreements in an effort to preserve value for the potential sale of the company and, when sale efforts fell through, its liquidation.  Compl. ¶¶ 86, 88–89.  This is dispositive.

A review of the factors confirms the result.  The allegations here fail to establish that the GBL Luxembourg Defendants and the StreetTeam UK corporate family formed a single employer within the meaning of the WARN Act.  With respect to the "unity of personnel policies," Plaintiffs plead no facts establishing that any personnel policies emanated from the GBL Luxembourg Defendants.  And

23

while Plaintiffs allege that those Defendants "*could* unilaterally control the Remuneration Committee, which set employee compensation companywide," they do not allege that the Committee ever formed. *See* Compl. ¶ 84 (emphasis added); Ex. 4 (SSA) at 10 (Remuneration Committee to be formed "[w]ithin 12 months" of disbursement of funds under December 2021 investment agreement).

"When examining the 'interrelation of operations' factor, courts generally consider the existence of arrangements such as the sharing of administrative or purchasing services, interchanges of employees or equipment, and commingled finances." *In re HMR Foods Holding, LP*, 602 B.R 855, 870 (D. Del. Bankr. 2019) (quoting *Pearson* v. *Component Tech. Corp.*, 247 F.3d 471, 500 (3d Cir. 2001)). On this factor, too, the Complaint is devoid of any allegations that any such arrangements existed between members of the StreetTeam UK corporate family and the GBL Luxembourg Defendants. Plaintiffs' allegation that GBL Luxembourg Defendants "held at least 30% of the equity of StreetTeam UK" does not change the analysis as it fails to establish StreetTeam UK's ownership the other way. Compl. ¶ 82. In any event, common ownership is the "least important factor" in the employment inquiry. *Childress*, 357 F.3d at 1005. Nor is there any allegation of common directors and officers—none of the officers of StreetTeam UK are alleged to be officers of the GBL Luxembourg Defendants and the single director appointed by the GBL Luxembourg Defendants is not alleged to be a director of those entities.

Plaintiffs fall back on the "de facto exercise of control" factor. "The core of this factor is whether one company was the decision-maker responsible for the employment practice giving rise to the litigation" (*i.e.*, the alleged layoffs in May and August 2022). *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 244–45 (3d Cir. 2008). But Plaintiffs fail to allege the existence of a single provision in the relevant investment and financing agreements giving the GBL Luxembourg Defendants the right to direct layoffs at StreetTeam UK, much less its subsidiaries in the United States. And Plaintiffs fail to allege a single act by a GBL Luxembourg Defendant supporting their allegations that those Defendants were "also directly involved in and directed the decision to shutter the companies and make the second round of mass layoffs in August of 2022," or that those entities, "[a]t minimum," "conspired with and aided and abetted the companies . . . to engage in mass layoffs without adequate notice under the WARN Act." Compl. ¶¶ 85, 89–90.

Plaintiffs' allegations that the GBL Luxembourg Defendants "directed" layoffs are also flatly contradicted by their allegations that "StreetTeam UK is, and at all relevant times was, dominated and controlled by its founders, Defendants Callum and Liam Negus-Fancey" and that the "entire Pollen enterprise operated under the direction and control of the London-based leadership team . . . headed by the Negus-Fancey brothers and Ellis." *Id.* ¶ 28. Plaintiffs' conclusory allegations regarding the layoffs fail to establish de facto exercise of control by the GBL Luxembourg Defendants. *See In re HMR Foods Holding, LP*, 602 B.R. at 873–74 ("conclusory allegations" that an indirect owner of food manufacturer, acting through directors appointed to the manufacturer's board by the indirect owner, "instructed" manufacturer's CEO "to conduct a mass layoff" did not "support a plausible claim of de facto control").

As courts considering New York and California WARN Act claims look to the same five-factor test, *see Staley* v. *FSR Int'l Hotels Inc.*, 775 F. Supp. 3d 720, 739 (S.D.N.Y. 2025); *In re United Furniture Indus., Inc.*, 2025 WL 1145063, at *11 (Bankr. N.D. Miss. Apr. 15, 2025) (collecting cases addressing California WARN Act), claims arising under those "mini-WARN Acts" also fail. And while one court has determined that, under California's WARN Act, a parent corporation that owns and operates the business in question, and thus "qualifies as an employer[,] may be liable for violations, if that employer ordered the shutdown," *id.* (citing *In re HMR Foods Holding, LP*, 602 B.R. at 877), that alternative test is of no use when considering investors and creditors.[10]

     (ii)  FLSA, New York, Nevada, and common law claims[11]

To assess whether a defendant is an "employer" for the purpose of an FLSA claim, courts use the four-part "economic reality" test. *Bonnette* v. *Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Under this test, courts consider whether a putative employer: "(1) had the

---

[10] Plaintiffs allege the GBL Luxembourg Defendants must have "conspired with and aided and abetted the companies in failing to pay wages, benefits and reimbursements . . . and to engage in mass layoffs." Compl. ¶ 90. These legal conclusions, which Plaintiffs do not allege as causes of action, demonstrate that Plaintiffs recognize that they cannot actually establish the GBL Luxembourg Defendants as employers themselves. The WARN Act does not provide for aiding and abetting liability. 29 U.S.C. § 2104(a) (providing that civil enforcement actions may be brought against "employers").

[11] Even if Plaintiffs had managed to plead a violation of the FLSA by the GBL Luxembourg Defendants, Plaintiffs' failure to plead willfulness means that their claim would be time-barred. *See* 29 U.S.C. § 255(a) (two-year statute of limitations; three-year statue for willful violations).

1    power to hire and fire the employees, (2) supervised and controlled employee work schedules or

2    conditions of employment, (3) determined the rate and method of payment, and (4) maintained

3    employment records." *Id.*  "While these factors are helpful and relevant to the joint employer

4    analysis, the 'ultimate determination must be based upon the circumstances of the whole activity.'"

5    *Adedapoidle-Tyehimba* v. *Crunch, LLC*, 2013 WL 4082137, at *4 (N.D. Cal. Aug. 9, 2013) (quoting

6    *Bonnette*, 704 F.2d at 1470).

7         The economic reality test also applies to wage and hour claims arising under New York or

8    Nevada's labor laws.  *See Paz* v. *Piedra*, 2012 WL 12518495, at *5 (S.D.N.Y. Jan 12, 2012);

9    *Gonzalez* v. *State*, 515 P.3d 318 (Table), at *1 (Nev. 2022).  And a plaintiff that fails to establish an

10   employer-employee relationship for the purpose of an FLSA claim also fails to establish such a

11   relationship at common law.  *See Boucher* v. *Shaw*, 572 F.3d 1087, 1090–91 (9th Cir. 2009)

12   (comparing scope of "employer" for purposes of FLSA and common law claims).

13        The economic reality here is that the GBL Luxembourg Defendants were investors in and

14   creditors of StreetTeam UK.  This fact alone cuts against establishing that those Defendants employed

15   Plaintiffs.  *See Jiang* v. *Kobe Japanese SteakHouse, Inc.*, 2024 WL 421995, at *4 (D. Mass. Feb. 5,

16   2024) (noting that allegation of "common ownership, or even simultaneous control of multiple

17   entities," was "not sufficient to establish that any of those entities can be considered an 'employer'").

18   To establish employer status, Plaintiffs "must provide adequate factual allegations demonstrating

19   actual operational control and the exercise of this control that permit the court to draw plausible and

20   reasonable inferences that a defendant had the requisite involvement with the employees." *Id.*

21        Again, Plaintiffs do not allege that the GBL Luxembourg Defendants supervised and

22   controlled work schedules, supervised and controlled conditions of employment, or maintained

23   employment records.  *See, e.g.*, *Adedapoidle-Tyehimba*, 2013 WL 4082137, at *5 (no employer-

24   employee relationship for FLSA claim where plaintiff failed to "plead facts addressing the economic

25   reality of his relationship to [the defendants], for example, indicating that they in any way controlled

26   his employment conditions or the nature of his work"); *Ortiz* v. *Consol. Edison Co. of N.Y., Inc.*, 2024

27   WL 3086161, at *14–16 (S.D.N.Y. June 7, 2024) (conclusory allegations that defendants had power

28   to discipline employees not credited where there was "no substantive allegation . . . supporting

Plaintiffs' contention that [defendants] had such authority"), *report and recommendation adopted*,

2024 WL 3105686 (S.D.N.Y. June 24, 2024).  Plaintiffs allege, on information and belief only, that

the GBL Luxembourg Defendants directed StreetTeam UK executives to make layoffs in May 2022,

that those entities "also directly involved in and directed the decision to . . . make the second round of

mass layoffs," and, "[a]t minimum . . . conspired with and aided and abetted the companies . . . to

engage in mass layoffs without adequate notice under the WARN Act."  Compl. ¶¶ 85, 89–90.

Absent is a non-conclusory allegation of a right whereby the GBL Luxembourg Defendants could

direct layoffs *anywhere*; a single act by any of those Defendants in connection with layoffs in the

United States; the name of a single individual who participated in the alleged direction or conspiracy

or aiding and abetting; or the identity of a single provision giving the GBL Luxembourg Defendants

the right to "direct" layoffs.  And, as noted above, Plaintiffs' conclusory allegations as to the GBL

Luxembourg Defendants are flatly contradicted by their own allegations that the Negus-Fancey

brothers "dominated and controlled" StreetTeam UK "at all relevant times" and that the "entire Pollen

enterprise operated under the direction and control" of a leadership team headed by "the Negus-

Fancey brothers and Ellis." *Id.*  ¶ 28.  On these facts, Plaintiffs fail to establish the required employer-

employee relationship between the GBL Luxembourg Defendants and Plaintiffs here.

(iii)    California law claims

"To be liable for violations of the California Labor Code, a defendant must be the plaintiff's

employer." *Lesnik* v. *Eisenmann SE*, 374 F. Supp. 3d 923, 947 (N.D. Cal. 2019).  California's

definition of employer reaches any party that (1) "exercise[s] control over the wages, hours or

working conditions" of employees; (2) "suffer[s] or permit[s]" employees "to work"; or

(3) "engage[s]" employees, thereby creating a common law employment relationship. *Id.* (quoting

*Martinez* v. *Combs*, 231 P.3d 259, 278 (Cal. 2010)).

"Control" turns on whether "the plaintiff was fundamentally 'subject to the control' of the

purported employer." *Doe* v. *Mahboubi-Fardi*, 2024 WL 2206640, at *11–12 (C.D. Cal. Jan. 2,

2024) (quoting *Taylor* v. *Cox Commc'ns Cal., LLC*, 283 F. Supp. 3d 881, 886 (C.D. Cal. 2017)).

While the language of this prong is broad, courts "circumscribe[] it by denying employer liability for

entities that may be able to influence the treatment of employees but lack the authority to directly

1    control their wages, hours or conditions." *Id.* (quoting *Ochoa* v. *McDonald's Corp.*, 133 F. Supp. 3d

2    1228, 1233 (N.D. Cal. 2015)).

3        Again, the GBL Luxembourg Defendants' status and rights as an investor or creditor do not

4    suffice.  As Plaintiffs do not allege the GBL Luxembourg Defendants controlled their hours or

5    working conditions, the question is whether the GBL Luxembourg Defendants controlled Plaintiffs'

6    wages.  For the reasons stated above, Plaintiffs fail to plead the GBL Luxembourg Defendants had the

7    right to set wages.  *See supra* Section II.B.1.i.  And even if that right existed, Plaintiffs do not allege

8    the GBL Luxembourg Defendants exercised it.  Ever.  These allegations "do not satisfy the legal

9    standard" for control "which requires a showing of more than that" the GBL Luxembourg Defendants

10   had the ability to influence the Plaintiffs' "wage, hours, and working conditions, but instead that they

11   *actually did so*."  *Doe*, 2024 WL 2206640, at *11–12 (emphasis added) (quoting *Martinez*, 49 Cal.

12   4th at 72); *see also Valencia* v. *N. Star Gas Ltd. Co.*, 291 F. Supp. 3d 1155, 1160–61 (S.D. Cal. 2018)

13   (failure to plead defendant qualified as "employer," despite allegation defendant "sets and negotiates

14   rates of pay," where complaint "fail[ed] to allege that [the defendant] *actually set and negotiated* rates

15   of pay for the employees at issue in this case" (emphasis added)).

16       When applying the "suffer or permit to work" standard, courts ask "whether the employer had

17   the power to either cause the employee to work or prevent him from working—that is, whether the

18   employer had the power to hire and fire."  *Doe*, 2024 WL 2206640, at *11–12 (cleaned up).  As noted

19   above, Plaintiffs provide nothing more than conclusory allegations that the GBL Luxembourg

20   Defendants exercised "rights" pursuant to investment and loan agreements.  But, as is clear from the

21   face of the Complaint and the documents incorporated by reference therein, the GBL Luxembourg

22   Defendants cannot have exercised rights that they never had to begin with.  *See supra* Section II.B.1.i.

23       "Engagement" means that a putative employer has "create[d] a common law employment

24   relationship."  *Martinez*, 49 Cal. 4th at 64.  "California uses a right-to-control test for its common law

25   analysis of employment classification."  *North* v. *Superior Hauling & Fast Transit, Inc.*, 2019 WL

26   8163808, at *6 (C.D. Cal. Aug. 23, 2019).  The chief consideration under this test is "whether the

27   person to whom service is rendered has the right to control the manner and means of accomplishing

28   the result desired."  *Id.* (quoting *S. G. Borello & Sons, Inc.* v. *Dep't of Indus. Rels.*, 769 P.2d 399, 404

28

(Cal. 1989)).  As noted above, Plaintiffs do not allege that the GBL Luxembourg Defendants exercised any control over Plaintiffs' hours or working conditions.

### 2.    Plaintiffs' breach of contract claims fail because the GBL Luxembourg Defendants never contracted with Plaintiffs.

In their Eighth and Ninth Causes of Action, Plaintiffs allege that "Defendants," including the GBL Luxembourg Defendants, breached "a series of employment agreements with Plaintiffs and members of the Employee Class" and "binding severance agreements" with "Plaintiff Ibekwe and members of the Severance Subclass." Compl. ¶¶ 138, 140, 144, 146.  Plaintiffs, however, fail to allege that the GBL Luxembourg Defendants were ever parties to those agreements.  Accordingly, the Eighth and Ninth Causes of Actions fail against the GBL Luxembourg Defendants to the extent they are based on breach of contract.  *See Pro Water Sol., Inc.* v. *Angie's List, Inc.*, 457 F. Supp. 3d 845, 851 (C.D. Cal. 2020) (dismissing breach of contract claim where plaintiff "neither pled any facts" nor "identified any provisions" making said defendants parties to the contract).

### 3.    Plaintiffs' tortious interference claim fails because the GBL Luxembourg Defendants had right to protect economic interests.

Plaintiffs also allege, apparently in the alternative, that the GBL Luxembourg Defendants "intentionally interfered" with the employment and severance agreements discussed above "by failing and refusing to approve expenditure of funds necessary to pay them." Compl. ¶¶ 142, 150.  Plaintiffs further allege that the GBL Luxembourg Defendants interfered with the employment agreements by "causing the Pollen enterprise to continue operating without payment" while knowing full well "that Pollen was not paying staff and could not pay staff." *Id.* ¶¶ 88, 142.  As Plaintiffs' allegations establish that the GBL Luxembourg Defendants acted with a legitimate business purpose, Plaintiffs have failed to state claims for tortious interference with contract.

Plaintiffs allege that the GBL Luxembourg Defendants "invested almost $30 million" in connection with StreetTeam UK's "Series C" equity financing and that the GBL Luxembourg Defendants later loaned over $26 million, becoming "Pollen's senior unsecured creditor." *Id.* ¶¶ 79, 82.  Even accepting as true allegations that the GBL Luxembourg Defendants "caus[ed] the Pollen enterprise to continue operating without payment" and "fail[ed] and refus[ed] to approve expenditure of funds necessary to pay" Plaintiffs, Plaintiffs fail to plead anything other than actions taken by the

GBL Luxembourg Defendants to protect their investments.  As those actions were justified, they cannot constitute tortious interference with contract.  *See Pankow Constr. Co.* v. *Advance Mortg. Corp.*, 618 F.2d 611, 616–17 (9th Cir. 1980) (affirming denial of motion to amend to add tortious interference with contract claim where, if the defendant had "induced" a third party "to breach the construction contract" with the plaintiff, "it did so to secure performance on its own contract"); *Dollar Tree Stores Inc.* v. *Toyama Partners, LLC*, 2010 WL 1688583, at *4 (N.D. Cal. Apr. 26, 2010) ("Plaintiff has failed to state a claim for tortious interference with the amended lease because the complaint and the BLA disclose that Comerica was acting with a legitimate business purpose and was justified in discontinuing the loan disbursements.").

### 4.    As Plaintiffs have adequate remedies at law, their Unfair Competition Law claim fails.

Plaintiffs allege that the GBL Luxembourg Defendants engaged in a variety of "unfair and unlawful business practices," all of which map on to other causes of action, and that as a result the Plaintiffs are "entitled to restitution," an equitable remedy.  Compl. ¶¶ 132, 136.  Such relief can be awarded by a federal court only when there is no adequate remedy at law.  *See Sonner* v. *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  As the complaint here is "devoid of substantive allegations showing Plaintiffs' legal claims would not provide them an adequate remedy," Plaintiffs' UCL cause of action should be dismissed.  *See Drake* v. *Toyota Motor Corp.*, 2020 WL 7040125, at *13 (C.D. Cal. Nov. 23, 2020).

### 5.    Plaintiffs' fraud claim should be dismissed.

In light of Plaintiffs' representation that they are not asserting the fraud claim (Count 11) against the GBL Luxembourg Defendants, that claim should be dismissed, and indiscriminate references to "Defendants" in Paragraphs 155–165 of the Complaint should be stricken.

### CONCLUSION

The GBL Luxembourg Defendants respectfully request that Plaintiffs' Complaint be dismissed for lack of personal jurisdiction.  In the alternative, the Complaint should be dismissed for impermissible group pleading and failure to state a claim.

1    Dated:  August 21, 2025          WACHTELL, LIPTON, ROSEN & KATZ

2

3                                     By:  /s/ Jonathan M. Moses
                                           Jonathan M. Moses (admitted *pro hac vice*)
4                                          Iliria Camaj (admitted *pro hac vice*)
                                           Ethan P. Amaker (admitted *pro hac vice*)
5                                          51 West 52nd Street
                                           New York, NY  10019
6                                          Telephone:  (212) 403-1000
                                           Fax:  (212) 403-2000
7                                          JMMoses@wlrk.com
                                           ICamaj@wlrk.com
8                                          EPAmaker@wlrk.com

9                                     BIRD, MARELLA, RHOW, LINCENBERG,
                                      DROOKS & NESSIM, LLP
10

11                                    By:  /s/ Cameron R. Partovi
12                                         John V. Berlinski
                                           Cameron R. Partovi
13                                         1875 Century Park East, 23rd Floor
                                           Los Angeles, CA  90067
14                                         Telephone:  (310) 201-2100
                                           Fax:  (310) 201-2100
15                                         jberlinski@birdmarella.com
16                                         cpartovi@birdmarella.com

17                                    *Attorneys for Specially Appearing Defendants*
                                      *GBL Capital Coinvest Master Sàrl; GBL*
18                                    *Capital Participations Sàrl; Sienna Investment*
                                      *Managers Luxembourg SA*
19

20

21

22

23

24

25

26

27

28

31

# <u>ATTESTATION</u>

Pursuant to Civ. L.R. 5-4.3.4(a)(2)(i), the filer attests that all signatories listed, and on whose behalf this filing is submitted, concur in its content and have authorized the filing.

*/s/ Cameron R. Partovi*
Cameron R. Partovi

32